Hillsborough
No. 85-523

CNA Insurance Company

v.

Hartford Insurance Company & a.

April 3, 1987

*Stark & Peltonen,* of Manchester (*Rodney L. Stark* and *Thomas V. Trevethick* on the brief, and *Mr. Stark* orally), for the plaintiff.

*Wadleigh, Starr, Peters, Dunn & Chiesa,* of Manchester (*Theodore Wadleigh* on the brief and orally), for the defendant Hartford Insurance Company.

*Ransmeier & Spellman,* of Concord, for the defendant Travelers Insurance Company, filed no brief.

Brock, C.J. This is an appeal by Hartford Insurance Company (Hartford) from a decree in a declaratory judgment action filed by CNA Insurance Company (CNA) to determine priority of coverage and defense obligation issues under three insurance policies issued to Kitledge Granite Corporation (Kitledge) and Barretto Granite Corporation (Barretto). We affirm in part and reverse in part.

Kitledge and Barretto are affiliated corporations. Kitledge operates a granite quarry in Milford, and Barretto finishes and sells the granite removed therefrom. Travelers Insurance Company (Travelers) issued a "Workmen's Compensation and Employers' Liability Policy" to Barretto and Kitledge for a policy period extending from July 1, 1979, to July 1, 1980. Hartford issued a "Comprehensive General Liability Insurance Policy" to Barretto and Kitledge for a like period, and CNA issued an "Umbrella Excess Third Party Liability Policy" to them for the same period of time.

On April 8, 1980, Richard L. Deshayes, an employee of Kitledge, was killed in the course of his employment. His estate's administra-

trix, Irene E. Deshayes, sued Kitledge and Barretto in a wrongful death action, seeking six million dollars in damages against each corporation, and CNA filed a petition for declaratory judgment to determine issues of coverage and defense. After a hearing, the Superior Court (*C. Flynn*, J.), ruling that a policy exclusion relied upon by Hartford to deny any but excess coverage to Kitledge was ineffective, determined that Hartford and Travelers have a co-primary obligation to defend the underlying action against Kitledge up to the combined limits of their policies, and that CNA is required to provide only excess coverage over the combined limits of those policies.

On appeal, Hartford maintains that the trial court erred in its determination of the order of coverage and in its imposition of defense obligations on Hartford, arguing that the Travelers policy is primary, followed by the CNA policy, with the Hartford policy bringing up the rear. CNA, of course, argues that the court below was correct in its determination, and Travelers has filed a concurrence in CNA's position that the Travelers coverage is co-primary and that Travelers is obligated to defend Kitledge. All issues relative to Barretto's coverage have been resolved, so it is no longer involved in these proceedings.

More specifically, Hartford presents two arguments as to why the superior court's decision was wrong. First, it argues that Travelers must provide the primary defense for Kitledge, maintaining that the Travelers insurance coverage is primary and therefore so is the obligation to defend; in addition, Hartford claims that the provisions of its comprehensive general liability policy do not require it to defend Kitledge. Second, Hartford argues that its coverage is only excess over that provided by Travelers and CNA, and not co-primary with that of Travelers. The basic structure of its analysis is as follows. Hartford first argues that Coverage B of the Travelers policy provides primary coverage by its terms. Then, in order to render its own coverage excess, Hartford relies on two exclusions contained in its policy. Those exclusions are as follows:

"This insurance does not apply . . .

(i) to any obligation for which the insured or any carrier as his insurer may be held liable under any workmen's compensation, unemployment compensation or disability benefits law, or under any similar law;

(j) to bodily injury to any employee of the insured arising out of and in the course of his employment by the insured or to any obligation of the insured to indemnify another because of damages arising out of such injury;

> but this exclusion does not apply to liability assumed
> by the insured under an incidental contract[.]"

(Emphasis omitted.) Then, basing its argument on an interpretation of *Royal Globe Insurance Co.'s v. Graf*, 122 N.H. 978, 453 A.2d 1262 (1982), Hartford contends that coverage under a comprehensive general liability policy containing the above exclusions, taking into account the modified effect given them by *Graf*, is excess over an umbrella excess third-party liability policy. Hartford further maintains that the intent and language of the CNA policy show that it provides the same coverage as is provided by the Travelers policy on an excess basis, thereby rendering the CNA policy the second layer of coverage. Thus, Hartford argues, its policy provides only the final layer of coverage.

CNA, on the other hand, maintains that the court below correctly set the order of insurance coverage to be provided in this instance. Its argument rests primarily on its own more narrow interpretation of two cases, *Graf*, mentioned above, and *Royal Globe Insurance Co. v. Poirier*, 120 N.H. 422, 415 A.2d 882 (1980). CNA also relies on a supplemental schedule of underlying coverage contained in its policy as evidence of its intent to provide coverage only in excess of that provided by Travelers and Hartford. CNA further maintains that the "other insurance" clauses in the Hartford and Travelers policies indicate that their coverage should be co-primary. We discuss these arguments more fully below.

No one, including Travelers, disputes that Coverage B of the Travelers policy provides Kitledge with primary coverage. Coverage B states that Travelers shall

> "pay on behalf of the insured all sums which the insured
> shall become legally obligated to pay as damages because
> of bodily injury by accident or disease, including death at
> any time resulting therefrom, . . . sustained . . . by any
> employee of the insured arising out of and in the course of
> his employment by the insured. . . ."

In addition, under the terms of its policy, Travelers is required to "defend any proceeding against the insured seeking . . . benefits [covered by the policy] and any suit against the insured alleging [a covered] injury and seeking damages on account thereof . . . ." Thus, Travelers has the obligation to afford primary coverage and to defend the underlying suit against Kitledge.

Turning to the Hartford policy, Hartford relies on exclusions (i) and (j), quoted above, and on its own characterization of the intrinsic nature of the CNA policy to conclude that the CNA policy coverage is prior to Hartford's coverage. Hartford maintains that, by virtue

of a provision in the CNA policy incorporating the terms of the underlying coverage, the CNA policy is intended to provide excess employers' liability coverage, leaving Hartford's own coverage to be triggered only after both the Travelers and the CNA policy limits have been exhausted. We disagree both as to the effect of the exclusions and as to the characterization.

In *Royal Globe Insurance Co. v. Poirier*, 120 N.H. 422, 415 A.2d 882 (1980), this court held that an exclusionary clause in a manufacturers and contractors liability policy which was virtually identical to exclusion (j) in the Hartford policy was "not a clear warning to the insured that claims of the estate of a deceased employee would not be covered . . . [and] that exclusion 'j' does no more than exclude from liability coverage those damages that are compensable under a workmen's compensation policy." *Id.* at 427, 428, 415 A.2d at 885, 886. Hartford argues that *Poirier* and *Royal Globe Insurance Co.'s v. Graf*, 122 N.H. 978, 453 A.2d 1262 (1982) establish that "the objective of exclusion (j) is to avoid duplication of coverage with respect to matters covered by a workmen's compensation and employer's liability policy[,]" including excess compensation and liability policies, of which, according to Hartford, the CNA policy is one. Hartford analogizes its position here to the position of Royal Globe Insurance Companies in *Graf*. A proper explanation of our reasons for rejecting its attempt to employ such an analogy requires an extended discussion of *Graf* itself.

*Graf* involved a petition for declaratory judgment to determine coverage where the underlying suit was a wrongful death action brought by the administrator of the estate of a deceased employee of Process Engineering, Inc. (Process). The employee had been killed in the course of his employment. At the time of the fatal accident, Process was covered by two relevant insurance policies; namely, a Royal Globe Insurance Companies (Royal) general liability policy and a Commercial Union Assurance Company (Commercial) aggregate excess workmen's compensation and employer's liability policy. Under the Commercial policy, Process was a self-insurer up to $153,000. The Commercial policy was held to provide coverage because the only exclusion relied on by Commercial to deny coverage was one equivalent to exclusion (i) in the instant case. Because the underlying suit was a wrongful death action, the workmen's compensation exclusion was held inapplicable, and Commercial was required to provide coverage.

The Royal policy, on the other hand, contained both exclusions (i) and (j), and the court concluded that the exclusions were still insufficient to bar coverage in that case. Thus, the court held that Commercial was primarily liable for any judgment exceeding $153,000

and that Royal was secondarily liable "because its general liability policy provide[d] coverage to the extent that Commercial Union's employers' liability policy [was] insufficient[.]" *Graf*, 122 N.H. at 981, 453 A.2d at 1265. However, the court noted that declaratory judgment in favor of Royal was proper because the Commercial policy limit was more than sufficient to cover the amount of the claim in the underlying action.

Hartford attempts to analogize the order of coverage established in *Graf* to its desired order of coverage in the present case in the following manner: The Travelers workmen's compensation and employers' liability policy here is equivalent to Process's $153,000 self-insurance requirement, CNA's umbrella excess third party liability coverage is equivalent to the Commercial aggregate excess workmen's compensation and employer's liability policy coverage, and the Hartford comprehensive general liability policy is equivalent to the Royal general liability policy. In this scheme of things, the Hartford policy would be last in the order of coverage. We reject Hartford's analogy.

An umbrella excess third-party liability policy is a unique form of coverage unlike any other form of excess coverage. It is excess over any other coverage and it does not contribute with any other excess coverage for pro rata contribution purposes. *See* 8A J. APPLEMAN AND J. APPLEMAN, INSURANCE LAW AND PRACTICE § 4909.85, at 452–54 (rev. ed. 1981). It is therefore not properly comparable to an excess workmen's compensation and employers' liability policy. Of importance also, apart from the unique character of an umbrella policy in general, is the supplemental schedule of underlying coverage contained in CNA's policy and relied on by it to establish the truly excess character of its coverage. The schedule lists both the Hartford and Travelers policies as underlying coverage to be exhausted before its policy coverage is applicable. These two factors are sufficient to distinguish the coverage issues present in *Graf* from those here, as there is no indication from the *Graf* opinion itself that such a schedule existed in that case.

Having rejected Hartford's analogy, the question then becomes how to establish the specific order of coverage to be afforded Kitledge in this case. As an initial matter, we agree with Hartford that CNA's other insurance clause is irrelevant to the question of priority. It provides:

"If, with respect to loss and ultimate net loss covered hereunder, the insured has other insurance, whether on a primary, excess or contingent basis, there shall be no insurance afforded hereunder as respects loss and ulti-

mate net loss; provided, that if the limit of liability of this policy is greater than the limit of liability provided by the other insurance, this policy shall afford excess insurance over and above such other insurance in an amount sufficient to give the insured, as respects the layer of coverage afforded by this policy, a total limit of liability equal to the limit of liability afforded by this policy.

*This condition does not apply with respect to the underlying insurance or excess insurance purchased specifically to be in excess of this policy."*

(Emphasis added.) Thus, CNA's provision regarding other insurance is inapplicable vis-à-vis the priority determination. However, CNA's supplemental schedule of underlying insurance lists, *inter alia*, the Hartford and the Travelers policies. This schedule, we believe, expresses a crystal clear intent that the CNA policy be excess over and above all other coverage listed in its schedule, as Coverage A of the policy provides that "[t]he company will indemnify the insured for loss in excess of the total applicable limits of liability of underlying insurance stated in the schedule." In addition, we do not believe that the CNA policy provision incorporating the terms of the underlying coverage and cited by Hartford was intended to alter this overall scheme of coverage. Our conclusion is reinforced by the treatises and case law on the subject:

"[Umbrella policies] are policies of insurance sold at comparatively modest cost to pick up where primary coverages end, . . . [U]mbrella coverages, almost without dispute, are regarded as true excess over and above any type of primary coverage, excess provisions arising in regular policies in any manner, or escape clauses."

8A J. APPLEMAN AND J. APPLEMAN, *supra* at 452, 453–54.

Thus, having determined that CNA's policy is excess over both of the other policies, we address the issue of the priority as between the Hartford and Travelers policies. The Travelers policy is concededly primary. We further hold, however, that the Hartford policy is not co-primary with, but, rather, is excess as to, the Travelers policy. This result follows from our holding in *Graf* that exclusion (i) only excludes coverage for workmen's compensation claims and that exclusion (j) is intended "'to avoid duplication of coverage with respect to the subject matters covered by a standard "Workmen's Compensation and Employer's Liability Policy."'" *Graf*, 122 N.H. at 980, 453 A.2d at 1264 (quoting *Poirier*, 120 N.H. at 427, 415 A.2d at 885). Therefore, we hold that exclusion (j) does "'no more than

exclude from liability coverage those damages that are compensable under a workmen's compensation policy.'" *Id.* (quoting *Poirier*, 120 N.H. at 428, 415 A.2d at 886). Analogously to the order of coverage as set in *Graf*, the Travelers workmen's compensation and employers' liability policy provides the primary layer of coverage. By virtue of the limited operation of exclusions (i) and (j) in its comprehensive general liability policy, Hartford provides only the second layer of coverage "to the extent that [the Travelers] policy is insufficient[.]" *Id.* at 981, 453 A.2d at 1265.

Because the amount of damages sought by the plaintiff in this case is several million dollars in excess of Travelers' policy limits, we will not consider the terms and conditions of Hartford's obligation to defend under its policy, because it is apparent that it will elect to participate in the defense in order to protect its and its insured's interests. The decision of the superior court is therefore affirmed in part and reversed in part.

> *Affirmed in part; reversed in part.*

All concurred.