# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2007-CA-01593-SCT

## CONSOLIDATED WITH

## NO. 2006-CA-01472-SCT

*GUIDANT MUTUAL INSURANCE COMPANY*

*v.*

*INDEMNITY INSURANCE COMPANY OF NORTH AMERICA*

DATE OF JUDGMENT:             08/14/2007
TRIAL JUDGE:                  HON. HENRY L. LACKEY
COURT FROM WHICH APPEALED:    MARSHALL COUNTY CIRCUIT COURT
ATTORNEYS FOR APPELLANT:      DION JEFFERY SHANLEY
                              H. SCOT SPRAGINS
ATTORNEYS FOR APPELLEE:       LEANN W. NEALEY
                              ROBERT A. MILLER
NATURE OF THE CASE:           CIVIL - CONTRACT
DISPOSITION:                  ON DIRECT APPEAL: REVERSED AND
                              REMANDED.   ON   CROSS-APPEAL:
                              REVERSED AND REMANDED - 06/25/2009
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE CARLSON, P.J., LAMAR AND CHANDLER, JJ.**

**CARLSON, PRESIDING JUSTICE, FOR THE COURT:**

¶1.    Today's case presents issues concerning priority of coverage, costs of defense, and contribution between insurers after a vehicular accident in which two individuals were seriously injured when their vehicle collided with a vehicle owned and operated by a volunteer fireman en route to the scene of a fire. Aggrieved by the trial court's entry of final

judgment on these issues, one insurer has appealed and one insurer has cross-appealed. In the end, we reverse the final judgment entered by the Circuit Court of Marshall County and remand this case for further proceedings consistent with this opinion.

**FACTS AND PROCEDURAL HISTORY**

¶2. On November 22, 1994, James Hingle, a volunteer fireman with the Slayden Mt. Pleasant Volunteer Fire Department in Marshall County, was dispatched to the scene of a fire in the county. En route to the fire scene, while driving his personal vehicle, Hingle collided with a vehicle occupied by Sam and Ruby Anderson, causing the Andersons to suffer serious injuries. As a result of this accident, on November 15, 1995, the Andersons filed two separate lawsuits in the Circuit Court of Marshall County. One lawsuit named only Hingle and alleged that his negligence in the operation of his vehicle proximately caused the vehicular accident and the resulting injuries and damages, which the Anderson alleged to be in the amount of $4,150,000 ("Hingle lawsuit"). The other lawsuit sought identical damages and, after amendment, named as defendants Marshall County, the Slayden Mt. Pleasant Fire Department, and the Marshall County Board of Supervisors ("Marshall County lawsuit"). In the Marshall County lawsuit, the Andersons asserted, *inter alia*, that the defendants were liable for Hingle's negligence inasmuch as Hingle was their employee, agent, servant, or representative, who was, at the time of the accident, driving his personal vehicle to the scene

2

of a fire in the performance of his duties as a member of a volunteer fire department in Marshall County.[1]

¶3.     At the time of the accident, the following insurance coverages were in force:  (1) Guidant Mutual Insurance Company, f/k/a Preferred Risk Mutual Insurance Company, (Guidant) insured Hingle's vehicle under a personal automobile liability policy with a $250,000-per-person/$500,000-per-accident limit; (2) Guidant also had issued to Hingle a personal umbrella protection policy with a $1,000,000 limit; (3) Indemnity Insurance Company of North America (INA) had issued to Marshall County (also covering Slayden Mt. Pleasant Fire Department) a business automobile liability policy with limits of $300,000; and (4) Titan Indemnity Company separately insured the Marshall County Board of Supervisors with a business automobile liability policy with limits of $300,000.  Both the INA policy and the Titan policy provided coverage as to nonowned automobiles.

¶4.     While the two lawsuits were pending, a dispute arose among the insurance companies as to which company should defend the litigation and which policy or policies should be considered as providing primary coverage and excess coverage.  On June 19, 1998, INA filed a declaratory judgment action against Guidant and Titan in the Circuit Court of Marshall County.  In that action, INA sought to have the circuit court determine that Guidant had a duty to defend all the defendants in the Hingle and Marshall County lawsuits; that INA had

---

[1]No parties asserted individual protection for Hingle pursuant to the Mississippi Tort Claims Act.  *See* Miss. Code. Ann. §§ 11-46-1 to 11-46-23 (Rev. 2002).

no duty to defend any of the defendants; that Titan and INA had coverage on an excess basis only; and that both of Guidant's policies afforded primary coverage for all defendants.[2]

¶5. In due course, INA filed a motion for summary judgment in the declaratory judgment action; however, the trial court held INA's motion in abeyance pending a final determination on the merits of the underlying lawsuit in the Marshall County case. Following that ruling, INA provided counsel to defend Marshall County and the fire department.

¶6. On August 26, 2003, the trial court granted Titan's Motion for Summary Judgment on the basis that James Hingle was not an employee of Marshall County; thus the trial court found there was no legal or factual basis for Titan, the insurer of the Marshall County Board of Supervisors, to be required to extend any liability coverage, defense, or indemnification for claims arising from the November 1994 automobile accident. Accordingly, the trial court dismissed all claims against Titan in the declaratory judgment action filed by INA.

¶7. Guidant eventually entered into settlement negotiations with the Andersons as to all their claims. On February 21, 2003, Guidant sent a letter to INA notifying the company of a settlement offer and providing INA with the opportunity to contribute its $300,000 coverage under INA's policy toward the proposed settlement offer. INA responded that until Guidant was willing to discuss reimbursement of INA's legal costs, INA was not willing to discuss a settlement contribution. In October 2003, prior to trial in the Hingle and Marshall

---

[2]In actuality, INA initially brought a declaratory judgment action on the same issues in federal court in December 1997; however, in the end, after a dismissal of the federal court action, a removal of the state court action to federal court, and a remand back to state court, the case finally ended up in the Marshall County Circuit Court.

4

County lawsuits, Guidant settled with the Andersons as to all their claims for the sum of $750,000. INA refused to participate in the Anderson settlement. Guidant allocated $300,000 from the personal automobile liability policy[3] and $450,000 from the umbrella policy for the total payment of $750,000.

¶8.     Thereafter, Guidant filed a motion for summary judgment against INA in the declaratory judgment action, seeking contribution or reimbursement from INA in the amount of $450,000, the sum Guidant had paid to the Andersons under its umbrella policy. Guidant argued that the umbrella policy was excess to the INA automobile policy issued to Marshall County.

¶9.     INA responded and likewise filed its own motion for summary judgment, alleging that Guidant was a voluntary payor; thus, according to INA, it had no duty to defend or to reimburse Guidant. INA also renewed its motion for summary judgment, alleging that Guidant should be required to reimburse INA for attorney's fees and expenses incurred in defending Marshall County and the fire department in the Anderson litigation.

¶10.    On July 30, 2006, the trial court dismissed both motions for summary judgment with prejudice. The trial court found that Guidant was the primary insurer under both of its policies, and until the $1.5 million limit was exhausted, INA had no obligation to participate in the settlement. The trial court also found that Marshall County and the fire department were insureds of INA; therefore, INA owed them a duty of defense. The trial court

[3]Based on the $250,000-per-person/$500,000-per-accident limits under the policy, Guidant paid $250,000 to Sam Anderson and $50,000 to Ruby Anderson.

additionally found that INA was not entitled to reimbursement from Guidant, and that Guidant was not entitled to contribution from INA for the settlement costs. In November 2006, the trial court sustained INA's Motion for Summary Judgment and clarified that the basis of the July 2006 ruling was Guidant's status as a voluntary payor.

¶11. The trial court issued a final judgment in August 2007, which incorporated the 2006 orders, dismissing the declaratory judgment with prejudice.[4] Guidant filed a notice of appeal and amended notice of appeal. Guidant appealed from the portion of the final judgment denying its request for contribution from INA for settlement costs and the finding that it was a voluntary payor. INA filed a notice of cross-appeal on the issue of the trial court's denial of its request for reimbursement of defense costs while defending Marshall County and the fire department.[5]

## DISCUSSION

¶12. In today's appeal, the parties raise several issues. For the sake of discussion, we restate the issues as follows: Guidant asks us to consider whether the trial court erred in finding that: (1) Guidant was the primary insurer under both of the policies issued to James

---

[4]The parties initially sought appellate review of the trial court's orders in Cause No. 2006-CA-01472; however, this appeal was dismissed pursuant to Mississippi Rule of Appellate Procedure 42(b) inasmuch as an appeal had been taken from a nonappealable order. Thus, in due course the current appeal in No. 2007-CA-01593 was consolidated with No. 2006-CA-01472.

[5]The trial court granted summary judgment in Titan's favor, finding that Hingle was not an employee of Marshall County at the time of the accident, thus dismissing INA's claims against Titan, and no appeal was taken from this ruling. Therefore, Titan is not a party to this appeal.

6

Hingle; (2) Guidant was not entitled to contribution from INA for settlement costs; and (3) Guidant was a voluntary payor. On cross-appeal, INA asks us to consider whether the trial court erred in finding that INA was not entitled to reimbursement for the legal expenses incurred by INA in its defense of Marshall County and the volunteer fire department.

¶13.    This Court employs a de novo standard in reviewing a trial court's grant of summary judgment. *Wise v. United Servs. Auto. Ass'n*, 861 So. 2d 308, 311 (Miss. 2003).

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Miss. R. Civ. P. 56(c). The trial court must carefully review all evidentiary matters in the light most favorable to the nonmoving party. *Wise*, 861 So. 2d at 311 (citing *Brown v. Credit Ctr., Inc.*, 444 So. 2d 358, 362 (Miss. 1983)). If in this view, the moving party is entitled to judgment as a matter of law, summary judgment should be granted. *Id.* (citing *Brown*, 444 So. 2d at 362). In today's case, both parties assert that there are no disputed issues of material fact. Appellate review of purely legal questions also requires a de novo standard of review. *Warwick v. Gautier Util. Dist.*, 738 So. 2d 212, 215 (Miss. 1999).

I.    **WHETHER THE TRIAL COURT ERRED IN DETERMINING THAT GUIDANT WAS THE PRIMARY INSURER UNDER BOTH POLICIES ISSUED TO JAMES HINGLE.**

A.    *Guidant's automobile policy*

7

¶14.    As issuer of James Hingle's personal automobile policy number 003888-283,[6] Guidant admits that it was a primary insurer; however, Guidant argues that INA was a coprimary insurer, given that INA insured Marshall County and its employees and volunteers under a business automobile liability policy, and given that at the time of the accident, James Hingle was responding to a call on behalf of the Slayden Mt. Pleasant Volunteer Fire Department. As such, Guidant urges that the trial court erred in finding that Guidant was the only primary insurer for all defendants on the Anderson claims in the Marshall County case.

¶15.    Guidant's policy issued to Hingle included the following "other-insurance" clause:

OTHER INSURANCE

If there is other applicable liability insurance we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits . . . .

¶16.    INA's business automobile liability policy issued to Marshall County and covering the fire department included the following "other-insurance" clause:

B.5.    OTHER INSURANCE

a.      For any covered "auto" you own, this Coverage Form provides primary insurance. For any covered "auto" you don't own, the insurance provided by this Coverage Form is excess over any other collectible insurance . . . .

. . . .

b.      When this coverage form and any other coverage form or policy covers on the same basis, either excess or primary, we will pay only our share.

---

[6]The limits of the Guidant automobile policy issued to Hingle for bodily injury were $250,000-per-person and $500,000-per-accident.

8

Our share is the portion that the Limit of the Insurance of our Coverage Form bears to the total of the limits of all the coverage forms and policies covering on the same basis.

¶17.    INA's business automobile liability policy included the following definition of an "insured":

Section II–    Liability Coverage is changed by adding the following:

1.    WHO IS AN INSURED

. . . .

d.    Any volunteer or employee of yours while using a covered "Auto" you don't own, hire or borrow in your business or your personal affairs.

Insurance provided by this endorsement is excess over any other insurance available to any volunteer or employee.

¶18.    Guidant is correct in its assertion that, when there is a conflict in the policies, and the "two policies are indistinguishable in meaning and intent," they should be found "mutually repugnant and must be disregarded." *Allstate Ins. Co. v. Chicago Ins. Co.*, 676 So. 2d 271, 275 (Miss. 1996) (quoting *Travelers Indem. Co. v. Chappell*, 246 So. 2d 498, 504 (Miss. 1971)). "Where competing insurance policies each contain conflicting 'other insurance' clauses or 'excessive coverage' clauses, the clauses shall not be applied and benefits under the policies shall instead be pro rated according to the coverage limits of each policy." *Id.* (quoting *Chappell*, 246 So. 2d at 504). Moreover, Guidant contends that coverage disputes of priority of primary and secondary coverage are resolved by determining the relative

9

proximity the risk bears to the loss, and that there can be more than one primary insurer after a loss.

¶19.    INA argues that, for automobiles the county did not own (referred to as "nonowned vehicles"), the coverage provided by INA was in "excess over any other collectible insurance available to any volunteer or employee." Therefore, INA urges this Court to apply the plain language of the policy. INA cites the general rule that where a policy contains language that is unambiguous, the terms of the policy will be enforced. *See, e.g.*, ***Miss. Farm Bureau Mut. Ins. Co. v. Walters***, 908 So. 2d 765, 769 (Miss. 2005) (citing ***State Auto. Mut. Ins. Co. v. Glover***, 253 Miss. 477, 176 So. 2d 256, 258 (1965)). INA contends that the other available insurance coverages available to Hingle were both the automobile and umbrella polices that Guidant had issued to Hingle.

¶20.    The long-standing law in Mississippi is that the insurance policy issued to the owner of the vehicle is the primary policy – both parties concede as much. *See* ***Chappell***, 246 So. 2d at 505. In applying this rule to the priority-of-coverage dispute, the other collectible insurance in this case was the Guidant automobile policy issued to the owner of the vehicle, James Hingle. While it is clear that Marshall County's policy insured Marshall County's employees and volunteers, that coverage for vehicles not owned by Marshall County or the fire department was "excess over any other insurance" maintained by the county volunteers or employees on their personal vehicles. Therefore, the trial court committed no error in finding that Guidant was the primary insurer.

¶21. This holding is in keeping with this Court's precedent in ***United States Fidelity & Guaranty Co. v. John Deere Insurance Co.***, 830 So. 2d 1145 (Miss. 2002). In ***John Deere,*** an insured driver and passenger, both of whom owned car dealerships and were covered under commercial liability policies for their respective businesses, were involved in an accident with an uninsured motorist. ***Id.*** at 1146. The driver and passenger sued both insurance companies, John Deere, and USF&G, for uninsured motorist benefits. The trial court granted summary judgment in favor of John Deere on the basis that the two policies' "other-insurance" clauses were in conflict and mutually repugnant, and that the enforcement of these clauses would result in no coverage for the plaintiff. ***Id***. at 1148. Both policies also contained identical prorata clauses which provided that benefits in such cases involving two policies should be prorated according to the coverage limits of each policy. ***Id***. The ultimate issue before the Court was whether the payment of benefits should be prorated according to the coverage limits of each policy or whether the benefits should be paid out according to priority of coverage. ***Id.*** at 1146. This Court held:

> We find that the two policies should not be pro-rated because, under Mississippi law, the insurer for the owner of the vehicle involved in the accident is the primary insurer. Even though the "other insurance" clauses in the two policies are identical, they do not conflict. The "other insurance" clause simply establishes the order of priority of payments. The insurer of the vehicle is first in the paying line of uninsured motorist benefits.

***Id.*** This Court thus found that USF&G was liable only for any judgment in excess of John Deere's limits of coverage; however, the judgment did not exceed the limits of John Deere's primary policy. ***Id.*** at 1148.

11

¶22. Applying this long-held rule that the owner's policy is primary, we find no conflict in the two polices in this case. Guidant, as the issuer of the liability insurance policy to the owner of the vehicle involved in the accident, is the primary insurer. While the underlying premise of Guidant's position as to this policy is correct inasmuch as Guidant concedes it is a primary insurer, the notion that INA is a coprimary insurer suggests that INA has pro rata exposure for payments. This argument simply is not supported by Mississippi caselaw. However, it is equally true that INA is next in line for payment beyond the primary limits afforded by the Guidant automobile policy issued to Hingle.

B.    *Guidant's Umbrella Policy*

¶23. Guidant argues that the trial court erred in finding that the personal umbrella policy issued by Guidant to Hingle was primary over the business automobile liability policy issued by INA. Guidant directs our attention to the section on liability coverage in its umbrella policy:

> PART A - LIABILITY COVERAGE
>
> LIABILITY   We will pay the ultimate net loss that any covered person becomes legally obligated to pay because of personal injury or property damage to which the insurance applies occurring during the policy period. We will pay only that part of the ultimate net loss which is in excess of the applicable underlying limit or retained limit.
>
> . . . .
>
> Any insurance provided in the policy shall be excess over any other collectable insurance which applies to any part of the ultimate net loss. This does not apply to any policy specifically designed to provide coverage after benefits of this policy are used up.

12

¶24.	INA urges this Court to adopt the reasoning of the trial court inasmuch as the rule promulgated in *John Deere* and *Chappell* that a vehicle owner's insurer is the primary insurer should also apply to the vehicle owner's umbrella policy.  Likewise,  INA points to the above passage of Guidant's policy in support of INA's contention that the umbrella policy is tied to the underlying limits of the automobile liability policy, because it states Guidant will pay "that part of the ultimate net loss which is in excess of the applicable underlying limit or retained limit."

¶25.	Though this is an issue of first impression for this Court, generally,  most courts have held that an umbrella policy is not "other insurance" for purposes of a primary policy.  22 *Holmes' Appleman on Insurance* § 140.2, 391 (2003).[7]  As explained in *Holmes' Appleman on Insurance*, there are two types of excess clauses:

> The first type of excess clause, primary excess coverage, occurs when primary policies become excess by operation of the "other insurance" clause. This type of excess clause precludes an insured from double recovery for the benefit of the insurers. The second type of excess clause, also referred to as a true excess clause, does not act as a primary, but is specifically purchased by the insured

---

[7]Citing *Aetna Cas. & Sur. Co. v. Chicago Ins. Co.*, 994 F.2d 1254 (7th Cir. 1993); *Myers v. Burger King Corp.,* 618 So. 2d 1123 (La. Ct. App. 1993); *Dalton's Best Maid Prods. v. Houston Gen. Ins. Co.*, 855 S.W.2d 272 (Tex. Ct. App. 1993); *Allstate Ins. Co. v. Am. Hardware Mut. Ins. Co.*, 865 F.2d 592 (4th Cir. 1989); *Dalton's Best Maid Prods. v. Houston Gen. Ins. Co.*, 855 S.W.2d 272 (Tex. Ct. App. 1993); *Home Ins. Co. v. Liberty Mut. Ins. Co.*, 678 F. Supp. 1066 (S.D.N.Y. 1988); *CNA Ins. Co. v. Hartford Ins. Co.*, 129 N.H. 243, 525 A.2d 722 (1987); *State Farm Fire & Cas. Co. v. Mauro*, 103 A.D.2d 514, 481 N.Y.S.2d 90 (1984); *Aetna Cas. & Surety Co. v. Beane,* 385 So. 2d 1087 (Fla. Dist. Ct. App. 1980); *Liberty Mut. Ins. Co. v. United States Fire Ins. Co.*, 590 S.W.2d 783 (Tex. Civ. App. 1979); *Grant v. N. River Ins. Co.*, 453 F. Supp. 1361 (N.D. Ind. 1978); *see Towne Realty v. Safeco Ins. Co.*, 854 F.2d 1264 (11th Cir. 1988).  *But cf. Liberty Mut. Ins. Co. v. Fireman's Fund Ins. Co.*, 479 A.2d 289 (Del. Super. Ct. 1983).

to protect against large losses or an accumulation of small losses. The difference in the two types is that the latter has lower premiums and higher limits of liability.

*Id.* at 386. Moreover, primary excess coverage is typically automobile insurance that provides coverage for a temporary substitute or nonowned automobile that is in excess over any other valid and collectible insurance. *Id.* at 386-87. An umbrella policy falls into the latter category of true excess insurance. *Id.* at 389. Thus, by design, an umbrella policy is for the purpose of true excess coverage above and beyond any other applicable primary excess policy, even where the umbrella policy is held by the owner of the vehicle. "Other-insurance" clauses from primary automobile policies should not be compared with "other-insurance" clauses in true excess policies, for example, umbrella policies. Since they do not warrant comparison, they cannot be found to have identical, mutually repugnant clauses. Therefore, Guidant is correct in its assertion that the trial court erred in finding that Guidant's personal umbrella policy issued to Hingle must be exhausted before INA's business automobile liability policy (a policy which specifically covered the nonowned automobile involved in the accident) should be applied. Accordingly, we are required to reverse the trial court as to this issue and remand for proceedings consistent with this opinion.

## II. WHETHER THE TRIAL COURT ERRED IN DETERMINING THAT GUIDANT WAS A VOLUNTARY PAYOR.

¶26. On the eve of trial, the injured plaintiffs, the Andersons, sought settlement. As part of the agreed-upon settlement between Guidant and the Andersons, Guidant paid a total of $750,000 to the Andersons. Guidant allocated $300,000 to the personal automobile liability

14

policy, and $450,000 to the personal umbrella policy. Despite Guidant having provided notice to INA of the Andersons' demand to settle all claims, INA declined to participate in these settlement negotiations with the Andersons because INA conditioned its participation in mediation/settlement negotiations on Guidant reimbursing INA's defense costs, an offer rejected by Guidant. As a result of this settlement, INA was released from the suit, as were its insureds, Marshall County and the fire department.

¶27.   Guidant argues that it was not a voluntary payor pursuant to this Court's definition of a "volunteer" in the context of insurance disputes in *State Farm Mutual Automobile Insurance Co. v. Allstate Insurance Co.*, 255 So. 2d 667, 668 (Miss. 1971).  In *State Farm*, this Court defined a volunteer as "[a] stranger or intermeddler who has no interest to protect and is under no legal or moral obligation to pay." *Id.* at 669 (quoting *Mass. Bonding & Ins. Co. v. Car & Gen. Ins. Corp*., 152 F. Supp. 477, 482 (D.C. Pa. 1957)).  Guidant argues that because it was not a volunteer, it had a legal contractual obligation to protect and defend its insured.  Moreover, Guidant cites *McLean v. Love*, 172 Miss. 168, 157 So. 361 (1934), for the premise that one who pays under compulsion to pay is no volunteer. Guidants rests its compelled-settlement argument on *Hartford Accident & Indemnity Co. v. Foster*, 528 So. 2d 255  (Miss. 1988):

> [W]hen [a] suit covered by a liability insurance policy is for a sum in excess of the policy limits, and an offer of settlement is made within the policy limits, the insurer has a fiduciary duty to look after the insured's interest at least to the same extent as its own, and also to make a knowledgeable, honest, and intelligent evaluation of the claim commensurate with its ability to do so. If the carrier fails to do this, then it is liable to the insured for all damage occasioned thereby.

15

*Id*. at 265 (footnote omitted). In other words, Guidant argues that, because it had a duty to its insured to protect Hingle's interests by settling, Guidant settled with the Andersons under compulsion.

¶28. INA argues that Guidant's settlement payment fits squarely into Mississippi's definition of a voluntary payor. In support of this argument, INA asserts the following: (1) Guidant conceded that it did not owe the $450,000 paid from Hingle's personal umbrella policy, (2) Guidant controlled settlement negotiations with the Andersons by means of mediation, at which INA was not present; (3) Guidant's agreement with the Andersons to pay $750,000 under its policies to effect settlement came about absent any compulsion or legal obligation and with full knowledge of the facts; (4) Guidant did not enter into an agreement with INA to preserve the coverage dispute for a later date. INA further argues that, in an indemnity case, a party may not seek reimbursement following voluntary settlement without proving that "(1) it was legally liable to an injured third party, (2) that it paid under compulsion, and that (3) the amount it paid was reasonable." ***Certain Underwriters at Lloyd's v. Knostman***, 783 So. 2d 694, 698 (Miss. 2001) (citing ***Keys v. Rehab. Ctrs., Inc***., 574 So. 2d 579, 584 (Miss. 1990)). However, this case concerns the issue of contribution, not indemnity.

¶29. Our disposition of this issue is controlled by ***State Farm Mutual Automobile Insurance Company v. Allstate Insurance Company***, 255 So. 2d 667 (Miss. 1971), wherein State Farm settled with its insured and sought contribution from Allstate. ***Id.*** at 668. The trial court granted Allstate's demurrer, and State Farm appealed. ***Id.*** This Court reversed and

16

remanded, finding that State Farm had the right to move forward with its claim of contribution. *Id.* at 669. In ***State Farm***, this Court stated:

> "The majority of cases now recognize the undesirability of rewarding the insurer which refuses to honor its contractual obligations, and hold that payment by an insurer which properly undertakes a burden of settlement or defense does not render it a volunteer, not entitled to recover."

*Id.* (quoting 8 *Appleman on Insurance* § 4913, 398).

¶30. Here, as in ***State Farm***, Guidant is entitled to move forward with its claim of contribution. However, INA is liable only for contribution up to its stated limits of liability, if Guidant can prove it was legally liable to settle, and that the amount it paid the injured party or parties was reasonable.

### III. WHETHER THE TRIAL COURT ERRED IN REFUSING TO AWARD INA REIMBURSEMENT FOR COSTS ATTRIBUTABLE TO THE DEFENSE OF MARSHALL COUNTY AND THE SLAYDEN MT. PLEASANT VOLUNTEER FIRE DEPARTMENT.

¶31. In its cross-appeal, INA contends that Guidant had a duty to defend Marshall County and the Slayden Mt. Pleasant Volunteer Fire Department because Guidant's policy insured Hingle and "any other person or organization legally responsible for acts or omissions of Hingle." Furthermore, the Guidant policy stated that Guidant "will defend any suit seeking damages for personal injury or property damage . . . ." Moreover, INA contends that it properly demanded Guidant provide a defense to the fire department and Marshall County via correspondence as early as February 8, 1996. This demand letter, from an INA liability specialist to a claims supervisor at Guidant, stated: "[W]e believe the Preferred Risk (now

17

Guidant) polices provide primary coverage to all of the defendants in <u>Anderson v. Marshall County, et al.</u> . . . and that [Guidant] should be defending this lawsuit. We, therefore, demand that [Guidant] immediately assume the defense of the defendants in this lawsuit." Subsequent correspondence between the two companies and counsel for the two companies reiterated INA's position that Guidant had a duty to defend both Marshall County and the volunteer fire department.

¶32. Guidant counters that INA had a contractual duty to defend its insureds under the policy issued by INA to the volunteer fire department and Marshall County. INA, however, points to the following statement from its policy, "[W]e have no duty to defend 'suits' for 'bodily injury' or 'property damage'. . . not covered by this Coverage Form." INA maintains that, since it was an excess carrier, it had no such duty to defend under the policy.

¶33. INA cites two cases applying Mississippi law in support of the reimbursement of defense costs by primary carriers to secondary carriers. In ***State Farm Mutual Automobile Insurance Company v. Commercial Union Insurance Company***, 394 So. 2d 890, 894 (Miss. 1981), this Court held that the primary insurer had a clear duty to defend, and because it failed to do so, the secondary carrier was entitled to all reasonable and necessary expenses in fulfilling the primary insurer's obligations. In applying the holding from ***State Farm***, the United States District Court for the Southern District of Mississippi likewise found that the primary insurer for the owner of the vehicle owed reimbursement for reasonable and necessary expenses to the secondary carrier, the insurer of the driver involved in the accident.

18

***State Farm Auto. Ins. Co. v. Universal Underwriters Ins. Co.***, 601 F. Supp. 286, 289-91 (S.D. Miss. 1984).

¶34.   As previously stated, under Mississippi law, "when the words of an insurance policy are plain and unambiguous, the court will afford them their plain, ordinary meaning and will apply them as written." ***Progressive Gulf Ins. Co. v. Dickerson & Bowen, Inc***., 965 So. 2d 1050, 1054 (Miss. 2007) (citing ***Paul Revere Life Ins. Co. v. Prince***, 375 So. 2d 417, 418 (Miss. 1979)). "[T]he obligation of a liability insurance company under a policy provision requiring it to defend an action brought against the insured by a third party is to be determined by the allegations of the complaint in such action." ***S. Farm Bureau Cas. Ins. Co. v. Logan***, 238 Miss. 580, 589, 119 So. 2d 268, 271 (1960).  Furthermore, this Court has held that the obligation to defend is a contractual right as set out in the policy, separate and distinct from the issue of coverage.  ***Travelers Indem. Co. v. East***, 240 So. 2d 277, 279-280 (Miss. 1970).  In ***East***, this Court stated, "[t]he defense clause in the policy is considered to be a contractual right of the insured, for which he paid a premium, irrespective of other insurance and irrespective of primary or excess coverage." ***Id.*** at 80 (quoting ***Logan***, 238 Miss. at 588, 119 So. 2d at 271 (1960)). ***St. Paul Fire & Marine Ins. Co. v. Thompson***, 150 Mont. 182, 433 P.2d 795 (1967); ***Simmons v. Jeffords***, 260 F. Supp. 641 (D.C. Pa. 1966); ***Nat'l Cas. Co. v. Ins. Co. of N. Am.***, 230 F. Supp. 617 (D.C. Ohio 1964); 7A *Appleman Insurance Law and Practice* § 4685 (1962); ***Am. Employers Ins. Co. v. Goble Aircraft Specialties***, 205 Misc. 1066, 131 N.Y.S.2d 393 (N.Y. 1954); ***Am. Cas. Co. of Reading, Pa. v. Howard***, 187 F.2d 322 (4th Cir. 1951)).

¶35. Because Guidant's policy indicated that it insured any "organization legally responsible for acts or omissions of Hingle" (i.e., the volunteer fire department), and because the theory of the underlying complaint was that the volunteer fire department was legally responsible for the acts or omissions of Hingle in the course of his duties as a fireman, Guidant had a duty to defend the fire department and the county. INA should be entitled to all reasonable, necessary expenses incurred in the course of defending the fire department and Marshall County, but only those expenses incurred after demand was made on Guidant to provide a defense.

¶36. The record contains two affidavits from INA's retained counsel. One affidavit reveals that INA expended $26,764.12 in fees and expenses to John S. Hill of Mitchell, McNutt & Sams. The other affidavit states that INA expended $30,983.74 in fees and expenses to Susan L. Steffey of Watkins & Eager, PLLC. However, we find the record lacking inasmuch as these affidavits do not include any itemization of fees or costs, nor do they include any dates. Thus, this Court must remand this issue to the trial court, consistent with this opinion, for a determination of what reasonable, necessary defense costs were incurred in the course of INA's defense of the volunteer fire department and Marshall County following the February 8, 1996, demand letter.

## CONCLUSION

¶37. We find that, consistent with Mississippi law, the personal automobile liability policy Guidant issued to Hingle was primary, because it was issued to the owner of the vehicle involved in the accident. INA's business automobile liability policy issued to the county and

20

fire department provided coverage for all nonowned vehicles, but only in excess of the primary automobile insurance available to the employee, which in this case was Guidant's personal automobile liability policy. Because the umbrella policy that Guidant issued to Hingle was true excess coverage, the other-insurance clauses in the INA policy and the Guidant umbrella policy do not conflict. The coverage provided by Guidant's umbrella policy should have come into play only after the exhaustion of applicable coverage under Guidant's personal automobile liability policy and INA's business automobile liability policy. Because the trial court erred as to this issue, on direct appeal, we reverse and remand for further proceedings consistent with this opinion.

¶38.    As to the voluntary payor issue, this Court finds that the trial court erred in finding that Guidant's participation in the settlement of all claims with the injured plaintiffs, the Andersons, barred Guidant from seeking contribution from INA.

¶39.    As to the issue on cross-appeal, we find that the trial court erred in finding that INA was not entitled to reimbursement for certain reasonable and necessary defense costs. Therefore, we remand this issue to the trial court for further proceedings consistent with this opinion, for a factual determination as to which of INA's costs incurred in the defense of Marshall County and the volunteer fire department in the case brought by the Andersons warrant reimbursement.

¶40.    Accordingly, for the reasons stated, the final judgment of the Marshall County Circuit Court is reversed and this case is remanded to the Circuit Court of Marshall County for further proceedings consistent with this opinion.

21

¶41.  ON DIRECT APPEAL:  REVERSED AND REMANDED.  ON CROSS-APPEAL:  REVERSED AND REMANDED.

WALLER, C.J., DICKINSON, RANDOLPH, LAMAR, KITCHENS, CHANDLER AND PIERCE, JJ., CONCUR. GRAVES, P.J., CONCURS IN RESULT ONLY.