# THE STATE OF NEW HAMPSHIRE

# SUPREME COURT

**In Case No. 2015-0537, <u>Terry Ann Bartlett v. The Commerce Insurance Company & a.</u>, the court on December 22, 2016, issued the following order:**

Having considered the briefs and oral arguments of the parties, the court concludes that a formal written opinion is unnecessary in this case. The Commerce Insurance Company (Commerce) appeals an order of the Superior Court (<u>Garfunkel</u>, J.) denying its motion for summary judgment and granting the cross-motion for summary judgment of the petitioner, Terry Ann Bartlett, as to when coverage is "triggered" under a personal umbrella endorsement to the petitioner's homeowner's insurance policy issued by Commerce (the UIM Umbrella Policy). Commerce also appeals the trial court's ruling partially granting and partially denying its motion for summary judgment as to whether the excess uninsured/underinsured motorist (UIM) coverage in a separate Commerce policy insuring the petitioner's vehicles (the Auto Policy) applies proportionately with certain other UIM coverage. We affirm the trial court's ruling with respect to the amount at which coverage is triggered under the UIM Umbrella Policy and, as a result, we need not address whether the trial court erred in its ruling regarding the excess UIM coverage under the Auto Policy.

This is the second time this case has reached us on appeal. <u>See</u> <u>Bartlett v. Commerce Ins. Co.</u>, 167 N.H. 521 (2015). The following pertinent facts are taken from the summary judgment record or our prior decision. The petitioner was injured in New York in August 2004 when the motorcycle on which she was a passenger was struck by a motor vehicle. <u>Id</u>. at 523-24. The operator of the motor vehicle was insured by Allstate Insurance Company (Allstate). <u>Id</u>. at 524. In July 2009, the petitioner received the policy limit of $100,000 from Allstate. <u>Id</u>. The owner and operator of the motorcycle was insured by Foremost Insurance Company (Foremost). <u>Id</u>. The Foremost policy was issued in New Jersey and provided UIM coverage of up to $250,000 per person. <u>Id</u>.

The petitioner owned a motorcycle, which was registered and garaged in New Hampshire, and was insured by Progressive Northern Insurance Company (Progressive) under a policy that also provided UIM coverage of up to $250,000 per person. <u>Id</u>. The petitioner owned other vehicles, which were registered and garaged in New Hampshire, and were insured by Commerce under the Auto Policy that provided UIM coverage of up to $250,000 per person. <u>Id</u>. The petitioner's home was also insured through Commerce under a homeowner's insurance policy, modified by the UIM Umbrella Policy, which provided $1,000,000 of single limit UIM coverage. <u>Id</u>.

The parties agree that each policy provides UIM coverage and that the accident and the petitioner's injuries fall within the UIM provisions of each policy. Id. In addition, it is undisputed that Foremost is the primary insurer of UIM coverage, that Progressive and Commerce (through the Auto Policy) are the "excess" or secondary insurers, and that Commerce (through the UIM Umbrella Policy) provides umbrella coverage. Id. at 524-25. It is also undisputed that, if all policies are available to the petitioner, each layer of coverage must be exhausted before a subsequent layer of coverage is triggered. Id. at 525.

In 2012, the petitioner filed the instant petition for declaratory judgment. She moved, and Foremost, Progressive, and Commerce cross-moved, for summary judgment. Id. at 524. The trial court addressed the claims involving each insurer, determining that: (1) the petitioner was precluded from suing Foremost because her declaratory judgment petition was untimely pursuant to the New Jersey statute of limitations for UIM claims, which the court determined applied; (2) although Commerce was an excess insurer under the Auto Policy, it was required to "drop down" and provide primary coverage to the petitioner—that is, to provide coverage for her first $250,000 of damages; (3) Progressive was not required to "drop down" to provide primary coverage, and the petitioner had forfeited her entitlement to excess insurance coverage by Progressive when she settled with Allstate without Progressive's prior consent; and (4) Commerce, under the UIM Umbrella Policy, was required to provide coverage once the petitioner's damages exceeded the limits of all underlying or primary coverage that was actually available. Id. at 525.

Commerce appealed, and the petitioner cross-appealed. Id. at 523. We upheld the trial court's rulings regarding the petitioner's claims against Foremost and Progressive. Id. at 525-29. With regard to Commerce, we concluded that the "other insurance" provision of the UIM part of the Auto Policy did not require Commerce to "drop down" to provide primary coverage. Id. at 529-35. Rather, we determined that Commerce continues to be an excess insurer and has no obligation to pay UIM benefits under the Auto Policy until the petitioner's damages exceed $250,000. Id. at 535. We declined to address, in the first instance, whether the coverage available under the Auto Policy applies proportionately with the coverage that would have been available to the petitioner under the Progressive policy had she not forfeited her rights to coverage. Id. We further declined to decide when coverage under the UIM Umbrella Policy is triggered. Id.

Upon remand, Commerce moved, and the petitioner cross-moved, for summary judgment as to: (1) whether the excess UIM coverage available to the petitioner under the Auto Policy applies proportionately with the forfeited Progressive UIM coverage; and (2) when coverage under the UIM Umbrella Policy is triggered. The trial court determined that, pursuant to the Auto Policy, Commerce is proportionately responsible with Progressive "for 50 percent of the damages that must be paid on an excess basis, up to its limit of liability of $250,000." The court further determined that coverage is triggered

2

under the "insuring agreement" in the UIM Umbrella Policy when the petitioner's damages exceed $250,000.  Commerce appeals these rulings.

"In reviewing the trial court's rulings on cross-motions for summary judgment, we consider the evidence in the light most favorable to each party in its capacity as the nonmoving party and, if no genuine issue of material fact exists, we determine whether the moving party is entitled to judgment as a matter of law."  Todd v. Vt. Mut. Ins. Co., 168 N.H. 754, 758 (2016) (quotation omitted); see RSA 491:8-a, III (2010).  If our review of that evidence discloses no genuine issue of material fact, and if the moving party is entitled to judgment as a matter of law, we will affirm the grant of summary judgment.  Todd, 168 N.H. at 758.  We review the trial court's application of the law to the facts de novo.  Id.

"In a declaratory judgment action to determine the coverage of an insurance policy, the burden of proof is always on the insurer, regardless of which party brings the petition."  Cogswell Farm Condo. Ass'n v. Tower Group, Inc., 167 N.H. 245, 248 (2015) (quotation omitted); see RSA 491:22-a (2010).  The interpretation of insurance policy language is a question of law for this court to decide.  Bartlett, 167 N.H. at 530.  "We review questions of law de novo."  Cogswell Farm Condo. Ass'n, 167 N.H. at 248 (quotation omitted).  "The fundamental goal of interpreting an insurance policy, as in all contracts, is to carry out the intent of the contracting parties."  Bartlett, 167 N.H. at 530 (quotation omitted).

Our analysis "begins with an examination of the insurance policy language rather than upon the general purpose of a certain type of insurance policy."  Cogswell Farm Condo. Ass'n, 167 N.H. at 251 (quotation and citation omitted).  We look to the plain and ordinary meaning of the policy's words in context, "and we construe the terms of the policy as would a reasonable person in the position of the insured based upon more than a casual reading of the policy as a whole."  Id. at 248 (quotation omitted).  Policy terms are construed objectively, and where the terms of a policy are clear and unambiguous, we need not examine the parties' reasonable expectations of coverage; absent ambiguity, our search for the parties' intent is limited to the words of the policy.  Bartlett, 167 N.H. at 531.  The fact that the parties may disagree on the interpretation of a term or clause in an insurance policy does not necessarily create an ambiguity.  Id.  For an ambiguity to exist, the disagreement must be reasonable.  Id.

"In determining whether an ambiguity exists, we will look to the claimed ambiguity, consider it in its appropriate context, and construe the words used according to their plain, ordinary, and popular definitions."  Id. (quotation omitted).  "If one of the reasonable meanings of the language favors the policyholder, the ambiguity will be construed against the insurer in order to honor the insured's reasonable expectations."  Id. (quotation and citation omitted).

We first address whether the trial court erred in determining that coverage under the UIM Umbrella Policy is triggered when damages exceed $250,000. The UIM Umbrella Policy is an endorsement to the petitioner's homeowner's policy providing "excess uninsured motorists coverage." (Capitalization and bolding omitted.) The homeowner's policy sets forth definitions that are intended to apply throughout the policy. In addition, each of the relevant endorsements to the policy includes a list of defined terms that are intended to apply throughout that endorsement. Defined terms are identified with quotation marks to notify the reader which terms have a specific definition.

The "insuring agreement" in the UIM Umbrella Policy provides in relevant part:

> We will pay compensatory damages, in excess of the "retained limit", which an "insured" is legally entitled to recover from the owner or operator of an "uninsured motor vehicle" or "underinsured motor vehicle" because of "bodily injury":
> A. sustained by an "insured"; and
> B. caused by an accident.

(Capitalization and bolding omitted.) The term "retained limit" is not defined in the UIM Umbrella Policy.

The trial court found that the "insuring agreement" governs "the triggering point of the policy." The court interpreted this provision to obligate "Commerce to pay damages once the damages exceed the amount equal to the 'retained limit.'" Because the term "retained limit" is not defined in the policy, the court found it to be ambiguous. The court then adopted the petitioner's interpretation of the term, determining it to mean the amount of underlying UIM coverage the petitioner was required to maintain under the UIM Umbrella Policy—$250,000.

Commerce contends that the court erroneously construed "retained limit." It maintains that, although the term is not defined in the UIM Umbrella Policy, it is reasonable to use the definition of "minimum retained limit" in a separate Personal Umbrella Liability Endorsement (Liability Endorsement) to the petitioner's homeowner's insurance policy. The Liability Endorsement defines "minimum retained limit" to mean, as relevant here, "[t]he total limits of any other insurance that applies to the 'occurrence' which . . . [a]re available to an 'insured'." Reading the policies together, Commerce maintains that it is obligated to provide UIM coverage in excess of the UIM limit of $250,000 under the Foremost policy and the UIM limit of $250,000 under the Progressive policy. Thus, Commerce contends that it is not obligated to provide coverage under the UIM Umbrella Policy until the petitioner has exhausted the total combined limits available under those policies—$500,000.

4

The petitioner counters that, because "minimum retained limit" and "retained limit" are referred to in quotation marks in the respective policies, it is reasonable to conclude that they do not share the same meaning. She contends that if Commerce had intended for the meaning of "minimum retained limit" in the Liability Endorsement to apply to the term "retained limit" in the UIM Umbrella Policy, it "would not have used two different phrases." She argues that, in the absence of a definition of "retained limit" in the UIM Umbrella Policy, it is reasonable for the insured to interpret the term as referring to the specified amount of underlying insurance the petitioner was required to maintain under the UIM Umbrella Policy. Because Schedule A of the Liability Endorsement required the petitioner to maintain $250,000 per person of UIM coverage as the "Underlying Insurance-Deductible," she contends that the trial court correctly determined that the UIM Umbrella Policy is triggered when the petitioner's damages exceed $250,000. (Bolding omitted.)

Assuming, without deciding, that Commerce's interpretation of "retained limit" as meaning "minimum retained limit" is reasonable, we conclude that the petitioner has articulated another reasonable construction of the term as referring to the specified amount of insurance the petitioner was required to maintain under the UIM Umbrella Policy. See 15 L. Russ & T. Segalla, Couch on Insurance 3d § 220:33, at 220-39 (1999) (explaining that "[t]rue excess insurance generally applies only where a loss exceeds a specified level of liability" which "may be expressed in terms of the obligation of the insured to maintain primary insurance at a specified amount, or the obligation of the insured to self-insure for up to a specified amount, called a 'retained level'"). Because there are two reasonable interpretations, we hold that the term "retained limit" as used in the UIM Umbrella Policy is ambiguous. In view of the ambiguity, we will read the policy against the insurer in order to honor the reasonable expectations of the policyholder. See Great Am. Ins. Co. v. Christy, 164 N.H. 196, 203 (2012). We, therefore, conclude that the UIM Umbrella Policy is triggered when the petitioner's damages exceed the "retained limit" of $250,000.

Commerce argues, however, that the UIM Umbrella Policy is a true excess policy, and that we must interpret the policy as a whole in that context. In doing so, Commerce urges us to consider the "other insurance" provision in the policy. Commerce contends that the "other insurance" provision "unambiguously provides that" any insurance it provides with respect to a vehicle not owned by the insured "will be excess to the total limits of any 'underlying insurance' or any other primary insurance that applies." (Quotation omitted.) Thus, Commerce asserts that the UIM Umbrella Policy makes clear that it "will be excess to the total limits of any other primary insurance" and that, here, the Foremost and Progressive policies constitute any other primary insurance.

The "other insurance" provision states: "Any insurance we provide under this endorsement with respect to a vehicle you do not own will be excess to the

5

total limits of any 'underlying insurance' or any other primary insurance that applies." (Emphasis added.) This provision establishes the priority of coverage under the UIM Umbrella Policy when the insured is in "a vehicle [the insured does] not own."

Commerce's interpretation of the provision reads the phrases "any 'underlying insurance'" and "any other primary insurance that applies" together such that any coverage it provides under the UIM Umbrella Policy when the insured is in "a vehicle [the insured does] not own," will be excess to the total limits of both "any 'underlying insurance'" and "any other primary insurance that applies." We recognize that, in certain circumstances, the word "or" may be construed to mean "and" to carry out the intent of the parties. See Noell v. American Design, Inc., Profit Sharing Plan, 764 F.2d 827, 833 (11th Cir. 1985) ("It is an established [principle] that the word 'or' is frequently construed to mean 'and,' and vice versa, in order to carry out the evident intent of the parties." (quotation and brackets omitted)); 4518 S. 256th, LLC v. Karen L. Gibbon, P.S., 382 P.3d 1, 10 (Wash. Ct. App. 2016) (stating that "in certain circumstances, the conjunctive 'and' and the disjunctive 'or' may be substituted for each other if it is clear from the plain language" (quotation and brackets omitted)). We cannot say, however, that Commerce's interpretation of "or" as meaning "and" is the only reasonable interpretation of the provision. We conclude that it is equally reasonable that the word "or" means "or"—that is, that it means that any coverage provided "will be excess to the total limits of any 'underlying insurance' or any other primary insurance that applies." (Emphasis added.) Cf. Appeal of Niadni, Inc., 166 N.H. 256, 261 (2014) (explaining that use of disjunctive in statute meant only one of two alternatives need be shown); Unit Owners Assoc. of Summit Vista v. Miller, 141 N.H. 39, 45 (1996) (finding that use of disjunctive "or" in New Hampshire Consumer Protection Act manifests clear intent to award damages for either knowing or willful acts).

"Although an insurer has a right to contractually limit the extent of its liability, it must do so through clear and unambiguous policy language." MacLearn v. Commerce Ins. Co., 163 N.H. 241, 244 (2012) (quotation omitted). In electing to use the word "or" in the "other insurance" provision, Commerce has created a provision that is reasonably susceptible of different interpretations. Accordingly, we adopt the interpretation that favors the policyholder. See Brickley v. Progressive N. Ins. Co., 160 N.H. 625, 629 (2010); see also U.S. Automobile Assoc. v. Wilkinson, 132 N.H. 439, 442-43 (1989) (construing policy against insurer where policy contained two different per person limit of liability figures).

We recognize that the general rule is that umbrella policies are regarded as true excess over and above any type of primary coverage and excess provisions arising in a primary insurer's policy. See CNA Ins. Co. v. Hartford Ins. Co., 129 N.H. 243, 247-48 (1987); see also Monroe Guar. Ins. Co. v. Langreck, 816 N.E.2d 485, 493 (Ind. Ct. App. 2004). Nonetheless, whether

coverage exists "begins with an examination of the insurance policy language rather than . . . the general purpose of a certain type of insurance policy." Cogswell Farm Condo. Ass'n, 167 N.H. at 251 (quotation and citation omitted).

In this case, the "other insurance" provision is ambiguous because there are at least two reasonable interpretations as to the amount of excess coverage when an insured is in a vehicle not owned by the insured. Similarly, the "insuring agreement" is ambiguous because there at least two reasonable interpretations as to when coverage is triggered. If Commerce intended for coverage under the UIM Umbrella Policy to be triggered, for example, at only the greater of any underlying or other primary insurance or only after the exhaustion of "any other primary insurance that applies," it was incumbent upon Commerce to do so using clear and unambiguous language. See Great Am. Ins. Co., 164 N.H. at 203-04 ("Of course, an insurance company can preclude interpretation of language against it by including clear and unambiguous policy language." (quotation omitted)). Because it failed to do so, we adopt the construction of those provisions that favors the policyholder. See id. at 203. Accordingly, we affirm the trial court's determination that coverage under the UIM Umbrella Policy is triggered at $250,000.

Finally, the petitioner states that, if we agree with the trial court that the UIM Umbrella Policy is triggered once her damages exceed $250,000, we need not address Commerce's argument that the court erred in its ruling regarding the Auto Policy. She stipulates that her damages "do not justify a recovery in excess of $1,250,000." (Bolding omitted.) The UIM Umbrella Policy provides single limit UIM coverage in the amount of $1,000,000. Bartlett, 167 N.H. at 524. Thus, the petitioner asserts that, in light of her stipulation, if we conclude that coverage under the UIM Umbrella Policy is triggered when her damages exceed $250,000, we need not address whether the excess UIM coverage in the Auto Policy applies proportionately with the forfeited Progressive UIM coverage because the coverage amount under the Auto Policy "will have no practical effect on the parties in this case." Because Commerce does not dispute this assertion, we accept it. Accordingly, because we hold that the trial court did not err in determining that coverage under the UIM Umbrella Policy is triggered when Bartlett's damages exceed $250,000, we need not address Commerce's argument that the court erred in finding it proportionately liable with Progressive for excess UIM coverage under the Auto Policy.

Affirmed.

DALIANIS, C.J., and CONBOY, LYNN, and BASSETT, JJ., concurred.

**Eileen Fox,
Clerk**

7