## WADE v. WOODWARD et al.

(En Banc. Feb. 6, 1933. Suggestion of Error Overruled Mar. 9, 1933.)

[145 So. 737. No. 29948.]

Creekmore & Creekmore, of Jackson, for appellant.

**W. J. Evans,** of Calhoun City, and **J. H. Ford,** of Houston, for appellees.

410

**Smith, C. J.,** delivered the opinion of the court.

This is an appeal from a decree dismissing a bill filed by the appellant to confirm a title which he alleges he acquired to certain described land by virtue of a tax deed thereto. The case was tried on bill, answer, and proof, from which it appears that the sale of the land for taxes, and all prior proceedings therefor, including the assessment of the land, were regular, provided the orders made by the board of supervisors in approving the assessment roll and levying the county tax were made at legal meetings of the board. The assessment of the land was made in 1926, and it was sold in April, 1928, for the taxes due thereon, in 1927. The county tax levy was made by the board of supervisors in November, 1927.

Section 294, Code 1906, and section 198, Code 1930, require members of boards of supervisors to "meet at the courthouse of their county, on the first Monday in January next succeeding the election." Section 296, Code 1906, provides that the "board of supervisors shall hold regular meetings at the courthouse or in the chancery clerk's office, in counties where the chancery clerk's office is in a building separate from the courthouse, of their respective counties on the first Monday of each month. At the meetings for," etc.

By chapter 236, section 1, Laws 1914, section 296, Code 1906, was amended so as to read as follows: "The board of supervisors shall hold regular meetings at the courthouse or in the chancery clerk's office, in counties where the chancery clerk's office is in a building separate from the courthouse, except in counties having two court districts. At the meetings for," etc.

This amended statute omits the words, "on the first Monday of each month," which appear in section 296, Code 1906, between the words, "their respective counties," and the words, "at the meetings for." The statute

was again amended by chapter 242, Laws 1916, but the omitted words were not reinserted therein.

This omission was not corrected until the adoption of the Code of 1930, section 200 thereof supplying the omission. The result of this legislative error was that from the enactment of chapter 236, Laws 1914, until the adoption of the Code of 1930, there was no fixed statutory date for meetings of boards of supervisors, other than the first Monday in January next succeeding the election of the members thereof. Other sections of the Code of 1906 provide for called meetings of the boards, but none of the meetings of the board here under consideration were called in accordance therewith.

After the enactment of chapter 236, Laws 1914, the board of supervisors of Calhoun county, in which the land here involved lies, as did the boards of supervisors throughout the state, continued to meet on the first Monday of each month, as they had long been accustomed to do, for the transaction of the public business committed to them. If these meetings were void, the assessment for taxes of the land here involved, and the order of the board of supervisors, levying county taxes, are nullities, and the appellee's tax title is invalid. Were these meetings of the boards of supervisors void? It is manifest that the public interest requires this question to be answered in the negative, provided any rule of law will so permit.

One of the oldest maxims of the law is, "Communis error facit jus" (common error sometimes passes current as law). Broom's Legal Maxims (9 Ed.) 98; 4 Inst. 240; 12 C. J. 212; 1 Hughes on Procedure, section 179 et seq. This is but another way of saying that, "The law so favors the public good, that it will [in some cases] permit a common error to pass for right." Pease v. Peck, 18 How. 595, 597, 15 L. Ed. 518. It is under this maxim that the courts sometimes acquiesce in the long-continued er-

roneous construction of statutes by public officers charged with their administration, and decline to overrule their own former long acquiesced in erroneous decisions. Jones v. Tapling, 12 C. B. (N. S.) 826, at page 846.

In the words of BLACKBURN, Judge, in The Queen v. The Justices of Sussex, 2 B. & S. Q. B. 664, at page 679: "There are cases in which a mistaken notion of the law has, no matter why, become so generally accepted, and been so acted upon, as to render it probable that business has been regulated, and the position of parties altered in consequence; and in such cases we may hold that the general acceptation of the mistake has made that law which was originally error; Communis error facit jus; but then I think that, before we act upon this principle, we ought to see it clearly made out that the error has been commonly accepted, and that the nature of the case is such that parties are likely to have acted upon the mistake and so altered their rights and position."

Burrill's Law Dictionary is quoted in 12 C. J. 213, as stating that: "A common error may, in some cases, pass current as law. Thus, a practice which has been generally observed in a state for a great length of time, without objection or question, though it possibly might have originally been impeached, will be upheld in law, if the public good require it."

In 1 Hughes on Procedure, section 179, it is said that: "Acts committed on a prevailing popular, but mistaken notion of the law, often call for an application of communis error facit jus." The courts sometimes, in order to prevent injustice, have "taken the view that the maxim, 'communis error facit jus,' sanctions long continued and extensive practices, even though they may override the law." 27 R. C. L. 165. For instance, in Clay v. Sudgrave, 1 Salk. 32, it was said by Lord Holt that the act there called in question "is against the statute expressly, though now communis error facit jus."

414

The matters to be considered in determining whether the maxim should be applied here are: Section 170 of the Constitution, as did former Constitutions, by creating boards of supervisors and charging them with duties that can only be performed at board meetings, impliedly requires them to hold such meetings. Throughout the state's history, statutes, including chapter 236, Laws 1914, and chapter 242, Laws 1916, have required boards of supervisors, and their predecessors, boards of police, to hold regular meetings, the dates therefor, prior to the enactment of chapter 236, Laws 1914, being fixed by the statutes. From 1892, section 278 of the Code of that year, to the enactment of chapter 236, Laws 1914, the statutory date for the regular meetings of the boards of supervisors was the first Monday in each month. Many statutes continuously, long prior to, contemporaneously with, and subsequently to, the enactment of chapter 236, Laws 1914, provide for the transaction of certain public business at regular meetings of the boards, some of them designating the meeting in a particular month for the transactions of certain public business.

From this it will appear that it has long been the statutory custom for these boards to hold regular meetings, and since 1892, on the first Monday of each month. This custom was followed by the boards continuously after the enactment of chapter 236, Laws 1914, with the acquiescence of the public, either on the theory that the statute still required, or that custom had fixed the date for their regular meetings. Compare such a custom with a similar one approved by the Supreme Court of Florida in Douglass v. Commissioners of Baker County, 23 Fla. 419, 2 So. 776. Most of the business of the counties intrusted to these boards is transacted at their regular meetings, and this court has repeatedly upheld acts performed at such meetings since the enactment of chapter 236, Laws 1914, though the objection thereto here under consideration

was not raised. To now hold that these decisions were, in fact, erroneous, that all such meetings were void, and that all acts performed thereat were illegal, would probably cause financial ruin to many innocent persons, including the members of the boards of supervisors, who acted in good faith, and would not only be disastrous to them, but would be a public calamity. The maxim should be applied with caution, and the cases in which its application is justified are rare, but its application here runs counter to no statute, is justified by the facts, effectuates the clear constitutional and legislative intent, and promotes the public welfare.

In 12 C. J. 213, par. a of note 3, and in 29 Am. & Eng. Encyc. L. (2 Ed.) 379, many cases in which the courts have applied this maxim are collated, some, but not all, of which we have examined.

The decree of the court will be reversed, and a decree will be rendered here in accordance with the prayer of the bill of complaint.

Reversed, and decree here for the appellant.