KITCHENS, JUSTICE,
FOR THE COURT:
1f 1. As Greg Peters and Mike Williams were attempting to position, Peters’s fishing boat on its trailer, the winch handle recoiled, struck, and seriously injured Williams. Peters, who owned the truck, the trailer, and the boat, had two liability insurance policies covering bodily injury: his truck and trailer were insured by Allstate Property and Casualty Insurance Company (Allstate) and his boat was insured by Continental Casualty Company (Continental). Ultimately, the insurers settled with Williams for $460,000, each paying $230,000' toward the total settlement. Prior to settlement, however, the insurers had not agreed on apportionment. Continental sought a declaratory judgment in the Circuit Court of the First Judicial District of Harrison County, in which it claimed indemnity from Allstate based on its apportionment theory and also reimbursement for the defense costs it had incurred investigating the claim. Allstate responded with' a motion to dismiss, in which it sought indemnity. from Allstate based on its own apportionment theory and also sanctions against Continental for having made its defense costs and expenses claim. The circuit court treated the motion to dismiss as a motion for partial summary judgment and granted summary judgment in Allstate’s favor, but declined to award sanctions to Allstate. Allstate then filed a motion for summary judgment on Continental’s remaining indemnity claim, which the circuit court granted. Continental now appeals the grant of summary judgment on its indemnity claim. Allstate cross-appeals the denial of sanctions. As to Continental’s indemnity claim, we reverse the grant of summary judgment to Allstate and render- judgment in favor of Continental. As to Continental’s claim of entitlement to defense costs, we affirrh the grant of summary judgment for Allstate. Finally, we affirm the denial of sanctions to Allstate.
FACTS AND PROCEDURAL HISTORY
¶2. Greg Peters and his family took Peters’s twenty-six-foot, 2003 Regulator fishing boat to Ship Island, Mississippi, for a beach day and picnic lunch on June 22, 2013, accompanied by their friend Mike Williams and Williams’s son. The group returned to the boat launch in Gulfport, Mississippi, and Refers tied off the boat so the others could disembark. Williams then backed. Peters’s 2012 Chevrolet Silverado truck and the attached trailer down a public launch ramp and into the water so Peters could maneuver the boat onto the trailer. Peters drove the vessel onto the trailer and Williams, on land, hooked the trailer’s winch strap, which runs around rollers to position the vessel’s bow on the trailer, to the bow. Williams began tightening, the winch to draw the vessel onto the trailer,, .but the bow was .off-center. *43 Williams told Peters that he needed to back up the boat so that the bow could be centered on the trailer; but when Peters did, the winch recoiled and the handle struck Williams’s left eye, causing serious bodily injuries to Williams.
¶ 3. At the time of the accident, Peters’s 2012 Chevrolet Silverado truck and trailer were covered by a liability insurance policy from Allstate. The Allstate policy, effective from April 14, 2013, to October 14, 2013, covered liability for bodily injury up to $250,000. Peters also had obtained a liability insurance policy from Continental for his 2003 Regulator fishing boat, which was effective from April 13, 2013, to April 13, 2014, and covered liability for bodily injury up to $300,000.'
114. The respective insurance policies contained “other insurance” clauses. The Allstate policy’s “other insurance” clause stated the following: “[i]f more than one policy applies on a primary basis to an accident involving your insured auto, we will bear our proportionate share with other collectible liability insurance.” (Emphasis in original.) The Continental policy’s “other insurance” clause stated that “[i]f there is any other available insurance that would apply in the absence of this policy, this insurance shall apply as excess over the other insurance ....”
¶ 5. Peters reported the incident to Continental on August 26, 2013, and' Continental assigned Stuart Platt to investigate. Continental requested from ’ Williams an explanation of benefits from his piimary health insurance carrier and a medical records authorization form which allowed Continental “to correspond ■ directly with [Williams’s] doctors . regarding ... bills and treatment.”
¶ 6. Platt photographed the boat, trailer, and winch, including the handle which had struck Williams. Platt took recorded statements from Peters, Peters’s wife, and Williams. Platt also received authorization from Williams to obtain his medical records. His report of the investigation concluded that Williams ultimately had, to have surgery “to reattach the retina” and a second surgery “to place an artificial lens in the eye, to see if they could restore his vision.” According to Platt’s report of September 13, 2013, “[s]ince the surgeries, [Williams] has experienced some inter-ocular pressure” and “[i]f the pressure in the eye cannot be controlled,, another surgery may be needed to insert a valve to allow drainage of fluid from the eye to relieve .pressure ....” The injury caused Williams to have limited vision and, thus, Platt stated that “[w]e will have to retrieve the [medical] records and monitor [Williams’s] medical progress towards maximum medical cure, and determine if he has any permanent disability in the end .... ” He assumed the combined medical bills and lost wages would be substantial. On September 19, 2013, Platt sent Williams’s medical records to Continental from initial evaluations at Gulfport Memorial Hospital and Tri-County Eye Clinic and from a specialist at Vitreoretinal Eye Center.
¶ 7. On September 27, 2013, Continental paid Williams $1,000, Peters’s policy limit for Medical Payments coverage. Continental also provided a check to Williams for $25,000 in excess of the Medical Payments coverage, but informed him that such payment was not an admission “of liability or wrongdoing, and any monies paid herein are credited toward any ultimate monetary resolution.”
¶ 8. On October 22, 2013, attorney Robert Schwartz of Biloxi, notified Continental that he had- been retained on behalf ,of Williams and, on November 5, 2013, Continental sent Schwartz a copy of Peters’s insurance policy. Also on November 5, 2013, Continental’s' defense counsel, Jedd Malish of New Orleans, opined in an e-mail *44 to Continental that the Allstate auto policy “should provide primary coverage for this claim,” that the Continental boat policy “should only provide coverage i[f] [Williams’s] damages exceed $250,000,” and that “[b]ecause Allstate has primary coverage for this loss, it has the duty to defend this claim.”
¶ 9. On November 6, Malish informed Continental that Schwartz had requested a copy of the Allstate policy and had informed him that Williams’s medical bills were in excess of $100,000, that only twenty to thirty percent of Williams’s vision had been restored, that future surgery or surgeries possibly would be necessary, and that Williams was at risk for developing glaucoma. Accordingly, Malish observed that the damages could exceed the $250,000 Allstate auto policy limit and that Continental would be obligated to pay the excess.
¶ 10. Peters then made a claim with Allstate. At Allstate’s request, Continental sent a copy of Peters’s Continental boat policy to Allstate on November 11, 2013. Continental clarified it's position that Allstate had provided primary coverage, that it had a duty to defend Peters, and that, consequently, it was obligated to pay up to its' policy limit of $250,000. It tendered Peters’s defense to Allstate.
¶ 11. Allstate responded on December 19, 2013, and informed Continental that it took the position that the “other insurance” clauses of the policies were in conflict and “that Allstate and [Continental] should share in this loss on a pro rata basis according to their respective policy limits.” According to Allstate, “[t]he Allstate auto policy has $250,000 of coverage and the [Continental] policy has $300,000 of coverage, which after doing the math means that Allstate has 45% of the available coverage and [Continental] has 55% of the available coverage,” therefore “the defense costs and any settlement or other payment should be pro-rated accordingly.”
¶ 12. Continental replied by letter on January 20, 2014, that no conflict existed between the “other insurance” clauses, since the Allstate policy provided pro rata apportionment of coverage where more than one policy was primary, and the Continental policy, conversely, provided that it was to provide coverage in excess of other available insurance. According to Continental, “Mississippi courts have consistently applied the full effect of an excess clause where the other policy provided for pro rata coverage.” Allstate replied by e-mail on February 11, 2014, that, “[b]ecause the boat insured by the [Continental] policy was the cause of the incident and the trailer was simply present at the scene but not really involved, we do not believe that a court would conclude that the boat policy should have no other exposure other than excess.”
.. ¶ 13. Continental and Allstate ultimately agreed to defend Peters and to reserve the coverage dispute “until the underlying matter is ultimately resolved by settlement or trial.” However, the insurers could not agree with regard to which should handle the defense and select defense counsel. Allstate argued that,’if Continental was, as it claimed, an excess insurance carrier, then Continental “does not get to choose the way that the case is defended • or by whom.” In the meantime, Williams’s counsel, Schwartz, informed Continental and Allstate that Williams would be demanding $1,285,000.
¶ 14. Continental expressed, by letter dated July 2, 2014, an interest in attempting mediation of the underlying claim and Allstate agreed. The case settled at mediation on September 19, 2014, for $460,000, with Continental and Allstate each paying fifty percent of that amount to Williams.
*45 ¶ 15. Continental then; oh November 3, 2014, sent a demand letter to Allstate requesting $20,000, the difference between the $230,000 Allstate had paid and the Allstate policy limit of $250,000. Continental maintained that Allstate, as primary carrier, was obligated to pay up to its policy limit. Further, Continental demanded $31,979.11 in reimbursement for expenses it had incurred in investigating and defending the claims. Continental’s total demand of Allstate was $51,979.11. Allstate rejected the demand in a letter dated November 18, 2014, maintaining that Continental’s tendered payment of $230,000 at mediation was $23,000 under what it was obligated to pay under a pro rata apportionment. Because Continental “would have 55% of the total exposure,” Allstate contended, it had “underpaid at mediation in the amount of $23,000[ ] (55% of $460,00 is $253,000 and [Continental] only contributed $230,000 to the settlement).”
¶ 16. From December 2014 to May 2015, Continental proposed, and Allstate rejected, two proposals to settle the claim for $15,000 and $10,000 respectively, and also a proposal that the companies “have our attorneys work up a stipulated set of facts for a suit seeking declaratory judgment to present to the Court on cross motions.”’
¶ 17. In consequence of the insurers’ inability to resolve the dispute, Continental filed suit in the Circuit Court of the First Judicial District of Harrison County on July 7,2015, claiming entitlement to a total of $40,245.51. Continental sought a declaratory judgment that Allstate was the primary insurer and that Continental was an excess insurer. Continental further sought “to recover contribution from Allstate in the amount of $20,000 arising from Allstate’s duties as the sole primary insurer” and also $20,245.51, the “reasonable and necessary defense costs Continental incurred after tendering the defense of Mr. Williams’[s] claim to Allstate.”
¶18. Allstate answered on August 6, 2015. In addition to denying Continental’s claims, Allstate counterclaimed for a declaratory judgment that Allstate and Continental both were primary insúrers and thus both should have been obligated to pay a pro rata apportionment of the settlement. Allstate sought $23,000: “From á total settlement amount of $460,000, Allstate was thus responsible for a payment of $207,000 (45%) and because they paid $230,000 (50%), they are entitled to a reimbursement from Continental in the amount of $23,000.” Allstate further sought sanctions pursuant to Mississippi Rule of Civil Procedure 11 and the Litigation Accountability Act, Mississippi Code Section 11-55-3 et seq., including “reasonable fees and expenses incurred by Allstate in defend-' ing” Continental’s claims that Allstate had failed to defend.
¶19. Allstate also filed on August 6, 2015, a motion to dismiss Continental’s claims for defense costs and expenses and for sanctions against Continental. Allstate argued that a duty to defend never arose because Williams never filed a lawsuit. According to Allstate, it “actively investigated the incident when it was reported, by its insured and continued that investigation up until the time of settlement.” Because Continental unilaterally incurred defense costs, according to Allstate, its “claim for recovery of defense costs and expenses is patently frivolous and subject to sanctions” under Rule 11 and the Litigation Accountability Act.
¶ 20. Continental filed a response in opposition to Allstate’s motion to dismiss on August 24, 2015, in which Continental argued that the motion to dismiss should be converted to a motion for summary judgment based on Allstate’s having submitted various exhibits which had not been at *46 tached to the pleadings. Continental’s response was twofold: first, it argued that “Allstate’s conduct during the pendency of Mr. Peters’[s] claim amounted to a wrongful refusal to defend, thus entitling Continental to recover defense costs.” Second, Continental claimed entitlement to recover defense costs under a theory of equitable subrogation. Continental responded to Allstate’s request for sanctions by indicating that its claim was not frivolous because “Continental not only has some ‘hope’ of recovering defense costs under at least one of the theories, but it also believes that the facts garnered through discovery will prove Continental’s claim for defense costs meritorious.”
¶ 21. The circuit court considered Allstate’s motion to dismiss as a ‘motion for partial summary judgment and dismissed Continental’s claim for defense costs and expenses, finding that Allstate had no duty, to defend because no complaint had been filed based on the underlying claim. The court observed that “Continental began its investigation of the claim prior to its knowledge of the Allstate policy” and therefore, “it appears Allstate’s actions or inactions did not affect how Continental conducted its investigation.” The circuit court further found that, because Allstate had not breached a duty to defend, Continental was not entitled to recover defense costs under a theory of equitable subrogation. Nevertheless, the circuit court determined that sanctions were not warranted because Continental’s defense costs claim was neither frivolous nor had it been “interposed for delay or harassment.”
¶ 22. Allstate moved for summary judgment on the remaining indemnity claim on November 19, 2015. It maintained its argument that both it and Continental had been primary insurers and that, as such, each should have paid a pro rata apportionment of the $460,000 claim. Because each insurer paid $230,000 in settlement of the claim, or half, Allstate maintained its argument that Continental should have paid $253,000, fifty-five percent of the total coverage, and that Allstate should have had to pay only $207,000, forty-five percent of the total coverage, leaving an overpayment by Allstate of $23,000.
¶ 23. On December 7, 2015, Continental filed an opposition to summary judgment and reiterated its argument that its excess clause, controlled over Allstate’s pro rata clause and that, as such, it was obligated to pay only any amount in excess of Allstate’s $250,000 policy limit. Consequently, it claimed entitlement to $20,000 from Allstate, since it had paid $230,000 and, Continental contended, should have paid only $210,000. Continental argued further that, even under Allstate’s pro rata apportionment theory, Allstate would be entitled to only $20,884, not $23,000.[1] Continental also memorialized these arguments in a motion for summary judgment, filed on January 11, 2016, claiming again that it was entitled to $20,000 because Allstate was the sole primary insurer and Continental was the excess carrier.
¶ 24. The circuit court granted summary judgment to Allstate on February 22, 2016: “[Hjaving reviewed the applicable law as well as the language contained in the policies against the undisputed facts, the *47 Court determines that Continental is a co-primary insurer and should share in the loss with Allstate on a pro rata basis.” The court found “particularly relevant” the fact that the “underlying incident directly involved the boat insured by Continental Casualty, invoking the boating liability section of Continental’s policy.” Ultimately, however, the Court awarded to Allstate $20,884, the amount Continental agreed it was obligated to pay under Allstate’s pro rata apportionment theory,
¶25, Continental filed its notice of appeal on. March 7, 2016. Allstate filed - a notice of cross-appeal on the circuit court’s denial of sanctions against Continental.
¶26. The issues raised on appeal are restated as follows:
1. Whether the circuit court properly granted summary judgment to All- ' state on its indemnity claim, having found that both Allstate and Continental should pay the claim on a pro rata basis.
2; Whether the circuit court properly granted summary judgment to Allstate on Continental’s claim that it was entitled to recover the defense costs and expenses incurred after tendering defense to Allstate.
3. ON CROSS-APPEAL: Whether the circuit court erred by failing to sanction Continental for making a frivolous claim for defense costs and expenses.
Each issue is addressed in turn.
STANDARD OF REVIEW
¶ 27. This Court reviews a trial court’s grant of summary judgment de novo. Guidant Mut. Ins. Co. v. Indem. Ins. Co. of N. Am., 13 So.3d 1270, 1275 (Miss. 2009) (citing Wise v. United Servs. Auto. Ass’n, 861 So.2d 308, 311 (Miss. 2003)). Summary judgment “shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.” Miss. R. Civ. P. 56(c). . .
The evidence must be viewed in the light most favorable to the party against whom the motion has been made. If in this.view the moving party is entitled to judgment as a matter of law, summary judgment should forthwith be entered in his favor. Otherwise the motion should be denied.
Robichaux v. Nationwide Mut. Fire Ins. Co., 81 So.3d 1030, 1035 (Miss. 2011) (quoting Brown v. Credit Ctr,, Inc., 444 So.2d 358, 362 (Miss. 1983)).
DISCUSSION
1. Whether the circuit court properly granted summary judgment to Allstate on its indemnity claim, having found that both Allstate and Continentál should pay the claim on a pro rata basis.
¶28. Allstate argues at the outset that “this issue is very simple and can be resolved without any detailed analysis of the two policies and the other insurance clauses.” It cites the “long-standing law in Mississippi” that “the issuer of the liability insurance policy to the owner of the vehicle involved in the accident[] is the primary insurer.” Guidant, 13 So.3d at 1277. Thus, Allstate contends therefore that, because the boat covered by the Continental policy was in use at the time of Williams’s injury, Continental is the primary coverage carrier: “Allstate’s policy insures the truck, to which the trailer was attached, but it- provides no separate coverage ‘for the trailer or boat; the Allstate policy is *48 invoked only because the trailer was attached to the truck they insured.”
¶ 29. In Guidant, a volunteer firefighter was driving to the scene of a fire in his personal vehicle when his vehicle collided with another vehicle, seriously injuring the occupants. Guidant, 13 So.3d at 1273. Gui-dant Mutual Insurance Company insured the firefighter’s personal vehicle and Indemnity Insurance Company of North America had issued a business automobile policy to the county which employed the firefighter. Id. Applying the “long-standing law in Mississippi” that “the insurance policy issued to the owner of the vehicle is the primary policy,” this Court held that Gui-dant was the primary carrier, its policy having been “issued to the owner of the vehicle.” Id. at 1277. The Indemnity policy, while it insured county employees, provided “that coverage for vehicles not owned by [the county] or the fire department was ‘excess over any other insurance’ maintained by the county volunteers or employees on their personal vehicles.” Id.
¶ 30. Allstate is correct that this case is unlike Guidant in that the volunteer firefighter in that case was driving his personal vehicle, which was not owned by the county by which he was employed. By contrast, here, Peters owned the boat, trailer, and truck, all three of which were “involved in the accident.” But it is undisputed that the truck and trailer were insured by Allstate.[2] Allstate therefore makes an inferential leap to conclude that Continental is the 'primary insurer, because while Peters’s boat was “involved in the accident,” Peters’s truck and attached trailer also were “involved in the accident.”[3] The winch handle that struck Williams was part of the trailer. Moreover, in Guidant, the Court examined the language of the “other insurance” clauses in the respective Guidant and Indemnity policies to support its conclusion that Guidant was the primary insurer.
¶ 31. This Court has stated that “ ‘[t]he general common law rule is that “the liability of insurers under overlapping coverage policies is to be governed by the intent of the insurers as manifested by the terms of the policies which they have issued.” ’ ” Blue Cross & Blue Shield of Miss., Inc. v. Larson, 485 So.2d 1071, 1074 (Miss. 1986) (quoting Blue Cross & Blue Shield of Kan., Inc. v. Riverside Hosp., 237 Kan. 829, 703 P.2d 1384, 1390-91 (1985) (quoting 16 Couch on Insurance 2d § 62:44, at 480 (rev’d ed. 1983))). See also Farmers Ins. Exchange v. Hartford Cas. Ins, Co., 907 F.Supp. 234, 236 (S.D. Miss. 1995) (“When more than one insurance policy covers a particular incident, courts look first to the language of the policies to settle any disputes as to the application of the respective coverages.”).
¶ 32. This Court has observed:
[W]e gave examples of three broad categories of “other insurance” clauses where the phraseology of the policies permitted. The first is a “pro rata” clause in which one company is primary but agrees to pay its prorata share with *49 other primary insurers. The second category is the “excess” clause, which insures the loss only to the extent it is not-paid by other insurance. The third category is the “escape” clause where, the insurer disclaims any liability''. where there is other coverage.
Larson, 485 So.2d at 1072-73 (citing Travelers Indem. Co. v. Chappell, 246 So.2d 498 (Miss. 1971)). The Court continued:"
[S]o long as the escape v. escapef%lauses, excess v. excess clauses, and prorata v. prorata clauses were- identiéál, the courts held them to be conflicting and nugatory so as to cancel each other out, and therefore liability under the two policies was prorated between the two insurance policies in the ratio of ttó limits of liability fixed in each policy which bears to the total limits in alt of the policies covering the risk..
Larson, 485 So.2d at 1073 (quoting,Chappell, 246 So.2d at 503). The Courj; noted, however, that “where an excess clause is in conflict with ... ¾ prorata clause' in the other policy, the excess clause ordinarily would be given full effect.” Larson, 485 So.2d at 1073 (quoting Chappell, 246 So.2d at 503), See also Farmers Ins. Exch., 907 F.Supp. at 238 (citation omitted) (The “majority rule, by far, is that ‘excess' insurance’ is considered to prevail ovef pro rata—that is, it is not other valid and collectible insurance within a pro rata clause”).
¶ 33. Here, the respective insurance policies contained “other insurance” clauses. The Allstate policy’s “other insurance” clause stated the following: “[i]f more than one policy applies on a primary basis to an accident involving your insured auto, we will bear our proportionate share[4] with other collectible liability insurance.” (Emphasis in original.) The Continental policy’s “other insurance” clause stated that “[i]f there is any other available insurance that would apply in the absence of this policy, this insurance shall apply as excess over the other insurance .... ”
¶ 34. Continental compares its “other insurance” clause, which provided for excess coverage “if there is any other available insurance that would apply,” to the “other insurance” clause found in Allstate’s policy, which provided that “[i]f more than one policy applies on a primary basis to an accident involving your insured auto, we will bear our proportionate share with other collectible liability insurance.” (Emphasis in original.) While Allstate’s “other insurance” clause provided that Allstate would bear a share proportionate with other collectible liability insurance • in the event of an accident involving an insured auto,. Continental’s applied specifically to providing excess coverage when “any other available insurance” would apply. Allstate’s policy, too, contained an excess clause: “[i]f an insured person is using a substitute auto or non-owned auto, our liability insurance will be excess over other collectible .insurance.” (Emphasis in original.) Clearly, Allstate’s excess clause has no application to the facts of the present case.
¶35. “[Wlhere an excess clause is in conflict with ... a prorata clause in the other policy, the excess clause ordinarily would be given full effect.” Larson, 485 So.2d at 1073 (quoting Chappell, 246 So.2d at 503). Accordingly, Continental argues *50 that “the pro rata clause in the Allstate policy remains dormant because the Continental policy would not constitute ‘collectible liability insurance’ necessary to trigger Allstate’s ‘other insurance’ clause.” (Emphasis in original.)
¶ 36. This Court has held that the primary insurance policy limits must be exhausted before the excess carrier’s liability arises:
[T]he so-called “other insurance” clause in the primary policy excluding or modifying liability if the additional insured has other valid and collectible insurance is inapplicable because the insurance under the excess coverage policy is not to-be regarded as other collectible insurance available to the insured until the primary policy has beep, exhausted.
Indem, Ins. Co. of N. Am. v. Guidant Mut. Ins. Co., 99 So.3d 142, 156 (Miss. 2012) (quoting Chappell, 246 So.2d at 505 (quoting Couch on Insurance 2d § 62:60, 508-509 (1966))) (emphasis added). Accordingly, Continental argues that Allstate’s policy limits of $250,000 must be exhausted before Continental’s excess clause applies. Because Allstate paid only $230,000, Continental maintains on appeal that it is entitled to recover the $20,000 difference.
¶ 37. Allstate, responds with three arguments: first, it argues that the terms of the Continental policy are ambiguous; second, it argues that the “other insurance” clauses in the Allstate and Continental policies are in conflict and, therefore, Mississippi law requires a pro rata apportionment; and third, it argues that Allstate and Continental do not insure the same property for the same risk.
¶ 38. Allstate argues first that, because the boating liability section of the Continental policy contains á separate “other insurance” clause, the “other insurance” clause in the general section of the Continental policy renders the terms ambiguous:.-- This Court has held that “[i]f a contract contains ambiguous or unclear language, then ambiguities must be resolved in favor of the non-drafting party.” United States Fid. and Guar. Co. of Miss. v. Martin, 998 So.2d 956, 963 (Miss. 2008) (citing J & W Foods Corp. v. State Farm Mut. Auto. Ins. Co., 723 So.2d 550, 552 (Miss.1998)). “Ambiguities exist, when a policy can be logically interpreted in two or more ways ... Martin, 998. So.2d at 963 (citing Crum v. Johnson, 809 So.2d .663, 666 (Miss. 2002)). “However, ambiguities do not exist simply because two parties disagree over the interpretation of a policy.” Martin, 998 So.2d at 963 (citing HeartSouth PLLC v. Boyd, 865 So.2d 1095, 1105 (Miss. 2003)).
¶ 39. Continental’s “other insurance” clause', which appears in the “General Conditions” section of the policy, provides that:
If there is any other available insurance that would apply in the absence of this policy, this insurance shall apply as excess over the othér insurance, but the combined amount shall not exceed the limits of this policy for any loss under Coverage A, Boat and Boating Equipment or Coverage E, Boat Trailer. "
(Emphasis added.) The Continental policy contains a section entitled “Coverage B— Boating Liability.” That section includes a provision entitled “Operating Other Boats,” which states:
We will: provide this boating liability coverage to the named Insured and any family members, subject to the other provisions of this policy, while operating mother boat with the permission of its owner. However, we do not cover loss or damage to the other boat or its boating equipment. If there is any other available insurance, we will provide coverage only as excess over such insurance. The liability coverage under this section will *51 not apply if the other boat is: . A. a personal watercraft ....
(Emphasis added.) Because Coverage B, the boating liability section, is not mentioned in the “General Conditions”- excess clause, Allstate argues that Continental could not have intended it to apply, especially in light of the fact that Coverage B has its own excess clause.
¶ 40. Continental responds that it specifically limited Coverage A, Boating- and Equipment, and Coverage E, Boat Trailer, by including the “shall not exceed the limits of this policy” language.' Continental states that it intended excess under Coverage B to provide excess coverage, irrespective of the value of the claim. Continental further responds to Allstate’s argument by pointing out that no inconsistency exists between the excess clause contained in the “General Conditions” section and the excess clause found in the “Operating Other Boats” section of Coverage B, since the latter merely reinforces the former: Finally, Continental undercuts Allstate’s argument by pointing out that Coverage E, which covers the boat trailer, and is referenced in the “General Conditions” excess clause, also contains an excess clause.[5]
¶ 41. That Continental did not specifically reference Coverage B in the “General Conditions” excess clause demonstrates its intent to provide excess coverage for bodily injuries regardless of the amount of the claim. In contrast, the excess clause applies in the context of claims relating to the boat/ boating equipment and the trailer only in the event the claims did not exceed the policy limits for those claims. The “Operating Other Boats” excess clause in the Coverage B boating liability section of the policy applies by its terms only to nonowned boats. The policy is not ambiguous.
¶ 42. Allstate next argues that the pro rata clause in the “other insurance” section of its policy[6] and the excess clause in the “other insurance” section of Continental’s policy conflict and. that, as such, the coverage liability should be apportioned pro rata. Allstate relies on this Court’s holding that “the rule of repugnan-cy is applicable in cases in which ‘other insurance’ clauses or ‘excessive coverage’ clauses conflict. We have long followed the rule that the courts must enforce contracts as they are written, unless such enforcement is contrary to law or public policy.” Allstate Ins. Co. v. Chicago Ins. Co., 676 So.2d 271, 276 (Miss. 1996) (citing Berry v. Lamar Life Ins. Co., 166 Miss. 406, 142 So. 445 (1932)). The Court continued:
Syllogistic folly awaits the unwary justice who seeks to harmonize the conflicting terms presented herein using traditional rules of construction. Public policy and common sense1 must step in when legal jargon fails. Where competing insurance policies each contain conflicting “other insurance” clauses or “excessive coverage” clauses, the clauses shall not be applied and benefits under the policies shall instead be pro rated according to the coverage limits of each policy.
Allstate, 676 So.2d at 276.
¶ 43. In Allstate, Allstate provided, an insurance policy to a drug store; the policy covered the store’s employees and contained an “other insurance” clause which provided that, in the event other insurance covered a loss, it would “pay the amount of loss that is left after the full amount avail *52 able after the other insurance has been paid.” Id. at 273. Allstate’s policy also contained a provision that “if there is other insurance that specifically applies only in excess of this policy, this policy will be primary to that excess insurance.” Id. (emphasis in original). Chicago provided professional liability insurance to the pharmacist who owned the drug store. Id. The Chicago policy’s “other insurance” clause provided that “[i]f there is other valid insurance (whether primary, excess, contingent, or self-insurance) which may apply against a loss or claim covered by this policy, the insurance provided hereunder shall be deemed excess insurance over and above the applicable limit of all other insurance or self-insurance.” Id.
¶44. A wrongful death action filed against the pharmacist precipitated a declaratory judgment action filed by Allstate. Id. at 272-73. The trial court ruled that Allstate’s policy provided primary coverage and that Chicago’s policy provided excess coverage. Id. at 274. This Court reversed and remanded, finding that both clauses provided excess coverage and that “each insurer has attempted to limit its respective liability and coordinate its insurance with the other policy” and that “[i]n so doing, both Allstate’s and Chicago’s ‘other insurance’ clauses come into conflict.” Id. The Court observed that, “[standing alone, each policy would provide primary coverage.” Id.
¶ 45. This Court held that, because “[b]oth parties are, in effect, arguing that ‘your excess exceeds my excess,’ ” the rale of repugnancy applied such that it found “the conflicting clauses in the instant case to be mutually repugnant ....” Id. at 275. It therefore reversed the trial court’s decision and remanded “for a determination of the pro rata responsibilities of each party to this proceeding.” Id.
¶ 46. Allstate states that:
Nowhere in the Chicago Insurance opinion, or any other opinion located by Allstate, does the Mississippi Supreme Court expressly hold that an excess clause trumps a pro-rata clause ... and in fact, the Court was faced with prorata and excess clauses in the Chicago Insurance, Company case, and nonetheless held that any conflict in the clauses voids them and results in a pro-rata allocation.
(Emphasis in original.) But this Court specifically has held that “where an excess clause is in conflict with ... a prorata clause in the other policy, the excess clause ordinarily would be given full effect.” Larson, 485 So.2d at 1073 (quoting Chappell, 246 So.2d at 503).
¶ 47. And the cases in which this Court and the Mississippi Court of Appeals have applied the rale of repugnancy have, as in Allstate, dealt with provisions, which would, in effect, altogether shift the coverage burden to the other carrier. Compare Chappell, 246 So.2d at 504 (two escape clauses invalidated as “repugnant and nugatory”); Titan Indem. Co. v. Am. Justice Reciprocal, 758 So.2d 1037, 1042 (Miss. Ct. App. 2000) (“This Court can discover no compelling reason, on the facts of this case, to do anything other than treat these two clauses, each having the purpose of shifting what otherwise would be primary coverage of a claim of the other carrier, as mutually repugnant and simply disregard them both”), with U.S. Fid. & Guar. Co. v. John Deere Ins. Co., 830 So.2d 1145, 1148 (Miss. 2002) (“[Wjhile the ‘other insurance’ clauses are identical, they do not conflict. The ‘other insurance’ clause simply establishes the order of priority of payments.”).
¶ 48. Federal authority applying Mississippi law takes a similar approach. Compare Farmers Ins. Exch., 907 F.Supp. at 238 (Because an excess clause prevails over a pro rata clause, “[cjonsistent with *53 this majority rule, this court concludes, that Farmers’[s] coverage would not be implicated until Hartford expended its policy limits.”); Hill v. Gen. Ins. Co. of Am., 456 F.Supp.2d 757 (N.D. Miss. 2006) (Court declined to invalidate “other insurance” clauses as “mutually repugnant as a matter of equity” because the “other insurr anee” clauses did not, if enforced, leave the insured without any coverage); mth Cont’l Cas. Co. v. Coregis Ins. Co., 213 F.Supp.2d 673 (S.D. Miss. 2002) (Court invalidated “other insurance” clauses as mutually repugnant because, though Continental’s “other insurance” clause provided for pro-ration, it actually was an excess clause and, therefore, it was in conflict with Core-gis’s excess clause).
¶49. The “other insurance” clauses in Allstate’s and Continental’s respective policies do not conflict. The Allstate policy’s “other insurance” clause is not triggered, since Continental’s policy does not provide “other collectible liability insurance.” On the contrary, the Continental policy’s “other insurance” clause provides that where “any other available insurance” would “apply in the absence of this policy,” the Continental coverage applies as excess coverage. And while each policy would provide primary coverage[7] standing alone, the “other insurance” provisions of the respective policies do not have the effect of can-celling each other out. Rather, because Allstate provides “other available insur-anee” applicable “in the absence of [the Continental] policy,” Continental’s excess provision controls. Such a reading is consistent with this Court’s jurisprudence. See Larson, 485 So.2d at 1073 (quoting Chappell, 246 So.2d at 503).
¶ 50. Allstate argues finally that because “Allstate and Continental do not insure the same property for the same risk,” the respective “other insurance clauses need not be considered.”' It continues: “Allstate provides no coverage for the boat and Continental provides no coverage for the truck,[;]” therefore “[t]he risks associated with insuring a boat on the water and a truck on the road are ... far different.”
¶ 51. Allstate cites a case from the United States Court of Appeals for the Fifth Circuit holding that “[ujnder Texas law, ‘[t]he provisions of an “other insurance” clause apply only when the “other” insurance covers the same property and interest therein against the same risk in favor of the same party.’ ” United Nat’l Ins. Co. v. Mundell Terminal Servs., Inc., 740 F.3d 1022, 1028 (5th Cir. 2014) (internal citation omitted). But, as Continental responds, “this case involves a claim for bodily injury” and “both insurers provide coverage for bodily injury arising from the use of their respective vehicles.” Accordingly, Allstate’s argument is without merit.
¶ 52. Having found that Allstate is the primary insurer and Continental is the *54 excess insurer, we reverse the judgment of the Circuit Court of the First Judicial District of Harrison County and render a judgment in favor of Continental in the amount of $20,000.
2. Whether the circuit court properly granted summary judgment to Allstate on Continental’s claim that it was entitled to recover the defense costs and expenses incurred; after tendering defense to Allstate.
¶53. Continental maintains on appeal that it is entitled to recover $20,245.51 in defense costs ahd expenses incurred following its tender of defense to Allstate. Continental claims that after it, as excess insurer, tendered defense of Williams’s claim to Allstate,- the primary insurer,-“Allstate took conflicting positions regarding priority of coverage and did not appear to be mounting a defense,” leaving Continental with “no choice but to continue to expend considerable resources investigating Mr. Williams’s claim and defending Mr. Peters.”
¶ 54. “The liability insurance-company, has an absolute duty to defend a complaint which contains allegations covered by the language of the policy ,....” Moeller v. Am. Guar. & Liab. Ins. Co., 707 So.2d 1062, 1069 (Miss. 1996). Further, “[i]n Mississippi,- an insurance company’s duty to defend its insureds derives neither' from common law nor statute, but rather from the provisions of its policy, that is, its insurance contract with its insured.” Baker Donelson Bearman & Caldwell, P.C. v. Muirhead, 920 So.2d 440, 450 (Miss. 2006). “An insurance company’s duty to defend its insured is triggered when it becomes aware that a complaint has been filed which contains reasonable, plausible allegations of conduct covered by the policy.” Id. at 451. Allstate responds that it was under no obligation to defend Peters, since Williams never filed a lawsuit. -
¶55. Continental cites various cases in support of its argument. In Guidantj for instance, this Court held that Indemnity, the excess insurer, “should be entitled to all reasonable, necessary expenses incurred in the course of defending the fire department and Marshall County, but only those expenses incurred after demand was made on Guidant’to provide & defense.” Guidant, 13 So.3d at 1282.
¶56. Likewise, in State Farm Mutual Auto. Insurance Company v. Commercial Union Insurance Company, 394 So.2d 890, 891 (Miss. .1981), this Court considered State Farm’s suit on a bill of discovery in chancery court against Commercial Union in which State Farm sought “to recover attorney’s fees incurred in the defense of two circuit court lawsuits which arose out of an automobile-train collision.” ' This Court ultimately held that, “[b]ecause Commercial Union had a clear duty to defend, which duty State Farm as the secondary carrier fulfilled upon Commercial Union’s failure to do so, it follows State Farm is allowed to all reasonable and necessary expenses in fulfilling Commercial Union’s obligations.” Id. at 894.
¶ 57, Continental also cites Liberty Mutual Insurance Co. v. U.S. Fidelity and Guaranty Ins. Co., 756 F.Supp. 953, 954 (S.D, Miss. 1990), in which Liberty Mutual sued ÚSF & G for reimbursement of defense costs after having defended two state court actions. The United States District Court for the Southern District of Mississippi’ ruled that “Mississippi law is clear that if an insurer breaches a’duty to defend and the defense is • assumed by a second insurer, the second insürer may recover that portion of the reasonable and necessary, attorney’s fees and. settlement payments which the first insurer was obligated to pay.” Id. at 957.
*55 ¶ 58. But, as Allstate responds,' each case that Continental cites involves insurers seeking defense costs after having had to defend a lawsuit. Continental argues,’ however, that “Mississippi state and federal courts have found a duty to defend .even where no underlying complaint has been filed.” It cites State Farm Mutual Automobile Insurance Company v. Allstate Insurance Company, 255 So.2d 667, 668 (Miss. 1971), in which this Court considered State Farm’s “bill of complaint for discovery and contribution against Allstate Insurance Company, on the equity side of the' County Court of the First Judicial District of Hinds County.” Allstate and State Farm both insured a vehicle that was involved in a rear-end collision with a vehicle owned by Hertz Corporation. Id. State Farm investigated and, finding its insured to have been liable, “made demand on Allstate to contribute to a settlement of the1 claims, which demand was refused by Allstate.” Id. This Court held that “State Farm [had] acted for [the insured’s];'State Farm’s, and Allstate’s best interests in settling these claims out-of court.” Id. at 669. Because Allstate breached “its contract with the insured by refusing to defend him in any manner,” this Court allowed State Farm’s claims against Allstate for “one-half of the $2,380.00 paid by State Farm in total settlement of all claims” to proceed. Id. at 668-69.
¶ 59. In the present case, however, Continental does not claim that Allstate refused to contribute to the settlement. At mediation, Allstate paid $230,000 toward the total settlement of $460,000. And, contrary to Continental’s argument,' State Farm stands only for the proposition that an insurer which investigates and settles a claim may seek contribution from a co-insurer toward the settlement. That- case does not address whether the investigating insurer is entitled to recover the costs of the investigation.
¶60. Continental also cites a case in which this Court held that -“[w]ith a deductible, ....' the insurer usually has a duty to defend upon receipt of notice of the claim.” S. Healthcare Servs. Inc. v. Lloyd’s of London, 110 So.3d 735, 749 (Miss. 2013). But there,- this Court affirmed a grant of summary judgment to insurers because the insurers had not denied a defense to the insureds; “[r]ather, the Insurers required the Insureds to pay the $250,000 deductible amount, which included defense costs,‘as required by the policy.” Id¡ at 752.
¶ 61. Continental also cites this Court’s decision in Murphree v. Federal Insurance Co., 707 So.2d 523, 531 (Miss. 1997), for the proposition that “it is well settled under Mississippi law that an insurance company has a duty to investigate promptly and adequately an insured’s claim ....” However, that case involved an allegation of bad faith refusal to defend; and this Court observed that “a plaintiffs burden in proving a claim for bad faith refusal goes Beyond merely demonstrating that the investigation was negligent.” Id. While a duty to investigate may arise, this Court did not hold that an insurer has a pre-suit duty to defend. Moreover, as Allstate observes, Murphree involved an insured seeking defense costs pursuant to an insurance policy, not -an excess insurer’s •seeking to-recover defense costs from a primary insurer.
¶ 62. Continental also cites federal cases. But the issues before the United States District Court for the Southern District of Mississippi in both Mesa Underwriters Specialty Insurance Co. v. Daffy’s on River, Inc., 2014 WL 5025850 (S.D. Miss.: Oct. 8, 2014), and QBE Insurance v. McFarland, 2011 WL 3625308 (S.D. Miss. Aug. 17, 2011), did not involve an excess insurer’s seeking pre-suit defense costs from a primary insurer. Rather, both cases dealt *56 with the question of whether a declaratory judgment' action by an insurer was ripe despite only a notice of claim’s having been presented,- and no complaint’s having been filed. Mesa, 2014 WL 5025850, at *2; McFarland, 2011 WL 3625308, at *2. Continental also is correct that the United States Court of Appeals for the Fifth Circuit has observed that, ‘“[ujnder Mississippi law, insurers have a duty “to perform a prompt and adequate investigation and make a reasonable, good faith decision based on that investigation”....’” James v. State Farm Mut. Auto. Ins. Co., 743 F.3d 65, 70 (5th Cir. 2014) (quoting Broussard v. State Farm Fire and Cas. Co., 523 F.3d 618, 627-28 (5th Cir. 2008) (quoting Liberty Mut. Ins. Co. v. McKneely, 862 So.2d 530, 535 (Miss. 2003))). But James involved an insured’s suit against State Farm for a nearly thirty-month delay in tendering uninsured motorist policy limits. James, 743 F.3d at 66.
¶ 63. Under Mississippi precedent, Allstate, the primary insurer, did not have a duty to defend Peters because Williams never filed a lawsuit.
¶ 64. In addition to claiming that Allstate had a duty to defend, Continental argues that Allstate’s actions amounted to a refusal to defend. Continental cites Sarnafil, Inc.. v. Peerless Insurance Company, 34 Mass.App.Ct. 248, 609 N.E.2d 1234 (1993). In that case, the Appeals Court of Massachusetts determined that fact questions existed as to Sarnafil’s claim against Peerless Insurance Company for defense costs Sar-nafil had incurred in an arbitration between it and another company. Id. at 1235. The question of fact allowing the case to survive summary judgment was whether Peerless’s communication of its decision to deny coverage was prompt and whether it had conducted any investigation of the facts, despite its promise “to conduct a prompt and-diligent one.” Id. at 1238. That court found that the arbitration, “the cost of defending which is being sought from Peerless, was the equivalent of a suit filed against Sarnafil.” Id. at 1239 (emphasis in original). But the present case does not involve the alleged wrongful denial by an insurer of a defense to an insured. And Sarnafil does not address an excess insurance carrier’s allegation of wrongful denial of defense against a primary insurance carrier.
¶ 65. Continental claims that “Allstate took conflicting positions, stated that it would not defend Mr. Peters until a lawsuit was formally- commenced, and conducted virtually no investigation.” After Continental took the position that, under the respective insurance policies, “the Allstate policy provides primary coverage and the Continental policy is excess,” Allstate argued in response, as it argues now, that the language of the conflicting insurance policies need not be parsed, but that “any conflict in the two policies would result in both policies being considered primary and sharing on a pro rata basis.”[8] (Emphasis in original.)
¶66. Continental claims that Allstate “made a number of statements to Continental indicating that Allstate was not defending the claim asserted against Mr. Peters.” Continental wrote to Allstate that Continental “is currently providing a defense to Mr. Peters. That defense as well as primary indemnity coverage appears to *57 be the responsibility of Mr. Peters’[s] automobile carrier, Allstate, and we request that' you revisit your position.” - Allstate responded that:
Your letter also indicates that defense costs are being incurred but Allstate has not been placed on notice of a lawsuit and Mr. Peters has not reported being served with a complaint. If there has in fact been a lawsuit filed, please provide me with a copy of the same, as there are defenses to the claims being made. by Mr. Williams that should be asserted, particularly being Williams’[s] own comparative negligence.
¶ 67. Allstate’s counsel wrote to Continental’s counsel that:
I do not believe that Allstate will agree to Jed Malish as defense counsel unless we have an agreement on the front end about allocation of costs. What Allstate doesn’t want is someone running up a huge unnecessary bill (pretty typical for most New Orleans lawyers I have been involved with) and then turning it over to them for full payment on a theory that Allstate was 100% responsible for it. I will have to confirm with Allstate, but based on my last conversation with them, I believe that they will be willing to pick up the entire costs of the defense when a suit is filed and have the issue of pro rata allocation be decided after the fact, if necessary ....
Another letter from Allstate’s counsel to Continental’s indicated that:
Allstate does not dispute that they are a primary insurer with a duty to defend but it is their position that Continental is also primary, since they insured the boat that was involved in the incident. If Continental disputes that position and believes that they are excess only, that is no problem and this can be fought at a later date, but as an excess carrier, Continental does not get to choose the- way that the case is defended or by whom.
¶ 68. The evidence adduced by Continental does not support its claim that Allstate refused to defend the claims. Allstate took the position in negotiations with Continental about their respective coverage positions that Allstate, as' primary insurer, would defend Peters if and when a lawsuit was filed against him. Absent, the filing of a lawsuit, Allstate had no obligation to defend Peters.
¶ 69. Continental argues, however, ’that it “gathered records, ■ prepared damage evaluations, engaged in negotiations, hired an independent physician, and furthered the defense of Mr. Peters in a number of other ways.” Continental continues that “[tjhroughout this post-tender/pre-mediation period, Allstate and Continental requested the other’s investigative materials.” Continental claims to have “provided substantial materials but received virtually nothing from Allstate, indicating that Allstate had none of its.own to share.” Allstate responds that it “took statements, gathered medical records and began negotiating with counsel for Mr. Williams but this was simply part of their routine investigation.”
¶ 70. The record is devoid of evidence that Continental conducted a thorough investigation while Allstate did nothing. Continental’s claim that it received “virtually nothing from Allstate” is not supported by the record. Accordingly, viewing thé facts in the light most favorable to Continental, the nonmoving party, we affirm the judgment of the Circuit Court of the First Judicial District of Harrison County granting summary judgment to Allstate.
8. ON CROSS-APPEAL: Whether the circuit court erred by failing to sanction Continental for making a frivolous claim for defense costs and expenses.
¶ 71. Allstate sought sanctions pursuant to Mississippi Rule of Civil Pro *58 cedure 11 and the Litigation Accountability Act, Mississippi Code Section 11-55-3 et seq., including “reasonable fees and expenses incurred by Allstate in defending” Continental’s claims that Allstate had failed to defend. Allstate cross-appeals the circuit-court’s denial of sanctions.
' ¶ 72. Mississippi Rule of Civil Procedure 11(b) provides, in pertinent part, that:
If any party files a motion or pleading which, in the opinion of the court, is frivolous or is filed for1 the purpose of harassment- or delay, the court may order such a party or his attorney, or both, to -pay to the opposing party or parties the reasonable expenses incurred by such other parties and by their attorneys, including reasonable attorneys’ fees.
Miss. R. Civ. P. 11(b). Likewise, the Mississippi Litigation Accountability Act provides, in pertinent part, the following:
[I]n any civil action commenced or appealed in any court of record in this state, the court shall award, as part of its judgment and in addition to any other costs otherwise assessed, reasonable attorney’s fees and costs against any party or attorney if the court, upon the motion of any party or on its own motion, finds that an attorney or party brought an action, or asserted any claim or defense, that is without substantial justification, or that the action, or any claim or defense asserted, was interposed for delay or harassment, or if it finds that an attorney or party unnecessarily expanded the proceedings by other improper conduct including, but not limited to, abuse of discovery procedures available under the Mississippi Rules of Civil Procedure.
Miss. Code Ann. § 11-55-5(1) (Rev. 2012). The Act defines “[without substantial justification” as “frivolous, groundless in fact or in law, or . vexation, as determined by the court.” Miss. Code Ann. § ll-55-3(a) (Rev. 2012), The circuit court found that sanctions were not warranted because Continental’s claims were not frivolous and had not been “interposed for delay or harassment” and declined to find that “an attorney or party unnecessarily expanded the proceedings by other improper conduct.”
¶ 73. This Court has held that “[t]he decision to award monetary sanctions is left to the discretion of the trial court.” Hampton v. Blackmon, 145 So.3d 632, 634 (Miss. 2014) (citing McNeese v. McNeese, 129 So.3d 125, 130 (Miss. 2013)). A judgment denying sanctions is reviewed for an abuse of discretion. Hampton, 145 So.3d at 634 (citing In re Spencer, 985 So.2d 330, 337 (Miss. 2008)). “ ‘In the absence of a definite and firm conviction that the court below Committed a clear error of judgment in the conclusion it reached upon a weighing of relevant factors, the judgment of the court’s imposition of sanctions will be affirmed.’ ” Hampton, 145 So.3d at 634 (quoting Spencer, 985 So.2d at 337).
¶ 74. “A claim is frivolous when the claimant has no hope of success.” Hompton, 145 So.3d at 634 (citing Leaf River Forest Prods, v. Deakle, 661 So.2d 188, 196-97 (Miss. 1995)). “Thus, sanctions would be inappropriate if the plaintiff had some chance of success,” Hampton, 145 So.3d at 635 (citing Choctaw, Inc. v. Campbell-Cherry-Harrison-Davis and Dove, 965 So.2d 1041, 1044 (Miss. 2007)). “ ‘Though a case be weak or “light-headed,” that is not sufficient to label it frivolous.’ ” Anderson v. B.H. Acquisition, Inc., 771 So.2d 914, 922 (Miss. 2000) (quoting Scruggs v. Saterfiel, 693 So.2d 924, 927 (Miss. 1997)). This Court declined to hold that a claim had been frivolous, though the plaintiff did not prevail on appeal: “[although Anderson’s claim has proven to be unsuccessful, we cannot say that the claim *59 was frivolous or that Anderson had no hope of success.” Anderson, 771 So.2d at 922. Further, “[t]he fact that a case is weak is not sufficient to find that it was brought to harass.” City of Madison v. Bryan, 763 So.2d 162, 167 (Miss. 2000) (citing Brown v. Hartford Ins. Co., 606 So.2d 122, 127 (Miss. 1992)).
¶75. Allstate cites Ashley Healthcare Plan v. Dillard, 177 So.3d 175 (Miss. 2015), to argue that “the Mississippi Supreme Court has very recently affirmed an award of sanctions against a party who engaged in similar conduct as that -of Continental in the present case.” But in Dillard, this Court affirmed the imposition of sanctions against Ashley Healthcare Plan, which the Court found to have removed the case to federal court frivolously. Id. at 189. This Court observed that:'
[A]ll precedent which governs this case, both from the Northern District of Mississippi and from the Mississippi. Supreme Court, holds that ERISA does not preempt the chancery court’s duty to review minors’ settlements. In the absence of valid contrary or intervening authority, this area of the law was well settled when the plan undertook removal and had been for more than two decades.

Id.

¶ 76. Here, while the cases cited by Continental in the trial court may have been distinguishable, Continental’s position was neither frivolous nor “interposed for delay or harassment.” It cannot be said therefore that the trial court abused its discretion in declining to award sanctions to Allstate. Accordingly, we affirm the judgment of the Circuit Court of the First Judicial District of Harrison County denying sanctions to Allstate.
CONCLUSION
¶ 77. 'Because Allstate- is the primary insurer and Continental is the excess insurer, we reverse the judgment, of the Circuit Court of the First Judicial District of Harrison County and render a judgment in favor of Continental in the amount of $20,000. As to Continental’s claim that it is entitled to defense. costs and expenses it incurred in investigating the 'underlying insurance claims, we affirm the judgment of the Circuit Court of the First Judicial District of Harrison County granting summary judgment to Allstate. Finally, this Court affirms the denial of sanctions to Allstate. .
¶ 78. ON DIRECT APPEAL: AFFIRMED IN PART AND REVERSED AND RENDERED IN PART. ON CROSS-APPEAL: AFFIRMED.
.WALjLER, C.J., DICKINSON, P.J., KING.AND COLEMAN, JJ.,.CONCUR. RANDOLPH, P.J., CONCURS IN PART AND DISSENTS .IMPART WITH . SEPARATE WRITTEN OPINION JOINED BY MAXWELL, BEAM AND CHAMBERLIN, JJ.

. According to Continental, where the total coverage was $550,000 ($250,000 Allstate limits plus $300,000 Continental limits), Continental's pro rata apportionment ($300,000 of $550,000) would have been 54.54%. As such, Continental’s pro rata share of the settlement would have been $250,884 ($460,000 times. 0.5454). Allstate's pro rata share would thus, under Continental’s calculation, have been .$209,116 ($460,000 minus $250,884). Because Allstate contributed $230,000, according to Continental, it would have overpaid by only $20,884 ($230,000 minus $209,116). .

. The Allstate policy included in its definition of "Insured Auto” a "trailer while attached to an insured auto.” (Emphasis in original.)

. Continental responds that Allstate is attempting to make an argument this Court rejected, namely the argument Guidant had advanced that "coverage disputes of priority of primary and secondary coverage are resolved by determining the relative proximity the risk bears to the loss ....” Guidant, 13 So.3d at 1276. We agree, since Allstate's claim that Continental is the primary insurer based on the boat’s involvement in the accident requires either ignoring the involvement of the truck/trailer altogether (which Allstate does not appear to do) or determining that the boat’s involvement was greater than that of the truck/trailer.

. The Allstate policy defined "our proportionate share" as follows:
If there is other insurance covering thé loss at the time of the accident, we will pay only our share of any damages. Our share is determined by adding the limits of this insurance to the limits of all other insurance that applies on the same basis and finding the percentage of the total that our limits represent.
(Emphasis in original.)

. “This coverage is excess over any -other available insurance for the trailer.”

. Allstate’s "other insurance” clause provides: "[i]f more than one policy applies on a pri-maiy basis to an accident involving your insured auto/ we will bear our proportionate share with other collectible liability insurance.”

. Allstate argues that "the policies are both primary and provide coverage on a prorata basis." Though this Court has observed that two policies may be primary in the absence of the other, Allstate cites no authority for the proposition that two insurers can provide concurrent primary coverage and we find no Mississippi case law to support such a proposition. See Allstate, 676 So.2d at 274 ("[s]tanding alone, each policy would provide primary coverage.”). Allstate’s argumenrire-mains that Continental provided primary coverage:
As the Court should note from the undisputed facts, Greg Peters first reported this incident to Continental and not to Allstate until many months later. This is because the obvious conclusion to Mr. Peters, and anyone else looking at the issue neutrally, was that the policy he purchased to cover his boat would provide primary coverage to him when the boat was involved in a loss.
As discussed above, the truck and trailer also were involved. .

. Allstate stated that "[i]n all likelihood and based on the facts as we understand them the more probable result is that the Allstate policy would be determined to be excess, but to avoid a long drawn out battle, Allstate remains willing to share in the costs on a pro rata basis.” But that argument was an alternative one, and Allstate continued: If this matter is litigated, however, Allstate will take the position that as the insurer for the.instrumentality directly related to the loss [Continental Casualty] should provide primary coverage.”